## J. H. HAHN, Respondent, v. ST. LOUIS, KANSAS CITY & COLORADO RY. CO., Appellant.

**Kansas City Court of Appeals, February 21, 1910.**

1. **CARRIERS: Excuse for Delay: Unavoidable Accident: Prima Facie Case: Question for Jury.** Defendant undertook to carry 234 head of cattle for plaintiff from Versailles, Mo., to Mansfield, Ill. The cattle were loaded at Versailles and carried part of the way until their progress was stopped by a wreck of a train ahead of them. They were returned to plaintiff at Versailles, and he thereafter shipped them to Mansfield over another railroad. Plaintiff suffered a loss of $911 on account of the delay. Defendant offered evidence that the wreck which caused the delay was the result of a cause which it could not have prevented, but plaintiff offered evidence tending to show that the wreck was not so caused. *Held*, that under the evidence the question of whether or not the wreck was the result of negligence on the part of the defendant was for the jury.

2. **CARRIERS: Delayed Shipment or Refused Shipment: Damages.** Under the facts in this case plaintiff's damages are to be assessed on the basis that plaintiff was damaged by reason of the negligent delay of shipment, and not as though the carrier had wrongfully refused an offer of shipment.

3. **NEGLIGENCE: Practice: Burden of Proof: Carriers: Prima Facie Case: Instruction.** The court instructed the jury that on proof on the wreck "it devolved upon defendant to show that said wreck was unavoidable and occurred without any negligence on the part of the defendant." A reasonable construction of this language satisfies the rule that defendant was required only to show that the wreck was unavoidable by the exercise of due care.

Appeal from Morgan Circuit Court.—*Hon. Wm. H. Martin*, Judge.

AFFIRMED.

*W. F. Evans, A. H. Boltze,* and *Sebree, Conrad & Wendorff* for appellant.

(1)   No negligence was shown on the part of the defendant in relation to the shipment. Elliott on Rail-

roads, sec. 1482; Ecton v. Railroad, 125 Mo. App. 223; McCrary v. Railroad, 109 Mo. App. 569. (2) Instruction No. 1 given on the part of the plaintiff is erroneous, in defining the measure of damages. Hutchinson on Carriers (3 Ed.), sec. 1370; Birney v. Railroad, 20 Mo. App. 470; Gelvin v. Railway, 21 Mo. App. 273. (3) Instruction No. 2 given on the part of the plaintiff is erroneous, in using the term *prima facie*, without defining it, and in declaring the accident negligent unless it was shown to have been unavoidable. Prince v. Compress Co., 112 Mo. App. 66; Montgomery v. Railway, 181 Mo. 513; Mulderig v. Railroad, 116 Mo. App. 672. (4) The court committed error in admitting incompetent and improper evidence of a decline in the price of cattle at Mansfield, Illinois, from September 14 to September 21, 1907. Steffen v. Railway, 156 Mo. 336.

*A. L. Ross* and *H. E. Neville* for respondent.

(1) The court properly refused to give defendant's instruction in the nature of a demurrer to the evidence at the close of all the evidence. McFall v. Railroad, 117 Mo. App. 477; Dawson v. Wombles, 111 Mo. App. 532; Phippin v. Railroad, 196 Mo. 321; Bank v. Bennett, 114 Mo. App. 691; Green v. Railroad, 122 Mo. App. 647, 653; Root v. Railroad Co., 195 Mo. 368; Thompson v. Railroad, 136 Mo. App. 404. (2) Instruction No. I given at the instance of the plaintiff properly defined the measure of damages. Sloop v. Railroad, 93 Mo. App. 605; Gaun v. Railway, 72 Mo. App. 34; Wilson v. Railroad, 66 Mo. App. 388; Bank v. Railroad, 119 Mo. App. 10; Perry v. Railroad, 89 Mo. App. 49; Wilson v. Railroad, 129 Mo. App. 347. (3) Instruction No. 2 given at the instance of the plaintiff properly declared the law, and even if it were error to omit the words, "by the use of reasonable care" the error was cured by instructions given on the part of defendant. The instructions must be taken as a whole and construed together. Lachner Bros. v. Exp. Co.,

72 Mo. App. 19; Lile v. Gibson, 91 Mo. App. 480; Buck v. Railroad, 108 Mo. 179; Price v. Barnard, 70 Mo. App. 175. (4) It was not error to admit evidence of a decline in the price of cattle at Mansfield, Illinois, from September 14 to September 21, 1907. Sloop v. Railroad, 93 Mo. App. 605. (5) The shipper has the right to have his property carried without restriction of the carrier's common law liability, and a contract tending to restrict must be supported by a consideration. There was no reduction in freight, nor any special consideration in the case at bar. Knight v. Railroad, 120 Mo. App. 311; Myers v. Railroad, 120 Mo. App. 288. A carrier cannot contract against loss caused by its own negligence. Standard Milling Co. v. White Line Co., 122 Mo. 258; Griffin v. Wabash Ry. Co., 118 Mo. App. 549; Smith v. Railroad, 112 Mo. App. 610; Fulbright v. Railroad, 118 Mo. App. 482; Dawson v. Railroad, 79 Mo. 296.

JOHNSON, J.—This is an action against a common carrier to recover damages for the failure of the carrier to transport 224 head of stock cattle from Versailles in this State to Mansfield, Illinois. Defendant received the cattle, agreed to carry them for hire and did carry them some fifty or sixty miles but, being stopped by a wreck on its own line, was compelled to take the cattle back to the starting point where they were delivered to plaintiff and a few days later were shipped by him to Mansfield, over another railroad. The damages sustained in consequence of this abortive attempt at transportation are the subject of the demand which plaintiff seeks to found on negligence of defendant. A trial of the issues presented by the pleadings and evidence resulted in a verdict and judgment for plaintiff for $911, and the case is before us on the appeal of defendant.

The negligence alleged in the petition is "that the defendant by and through its negligence, wholly failed

and neglected to convey and transport said cattle from Versailles, Missouri, to Mansfield, Illinois, and deliver the same to plaintiff at Mansfield as it had agreed and contracted to do, but, on the contrary, after keeping said cattle in its cars and on its road for over twenty-four hours, defendant, by and through its agents and servants, returned said entire shipment of cattle, consisting of two hundred and twenty-four head contained in seven cars, to Versailles station and negligently failed and refused to transport said cattle and deliver them to plaintiff at Mansfield, Illinois, as it had agreed to do."

The answer contains a general traverse and among other special defenses alleges, in effect, that the wreck which stopped the shipment and compelled defendant to turn back was due to unavoidable accident and not to any negligence of defendant.

Material facts disclosed by the record thus may be stated: Plaintiff, a stockman, living five or six miles from Versailles, advertised a sale of the stock cattle in controversy, to be made September 14, 1907, in Mansfield, Illinois. On September 11, he delivered the cattle at Versailles and he and defendant entered into a written contract for their transportation to Mansfield, which in the ordinary course of business should have been accomplished in ample time for the advertised sale. In the answer defendant pleads certain terms and conditions of the written contract, but since the cause of action alleged in the petition is based on negligence, it is not necessary to waste any time on the contents of the contract and their legal import. Plaintiff must prove the negligence he avers or lose his case and on proof of such negligence, the exemptions and restrictions stipulated for in the written contract become ineffectual since, all other considerations aside, authorities unanimously agree that a common carrier in such cases cannot relieve itself by contract from liability for the consequences of its own negligence.

The train carrying the cattle proceeded eastward to a point near Argyle, where it was compelled to stop on account of the wreck of a west-bound freight train which occurred at the bridge over the Maries river. The havoc wrought by the disaster was very great. Cars were derailed and smashed, ties in the roadbed cut in two, the track torn up and the west end of the heavy steel bridge of the strongest construction was so badly wrecked and damaged as to be unsafe. It took a number of days for defendant, with the utmost effort, to open the road for travel. After holding the eastbound train at the scene of the wreck for many hours, defendant ran it back to Eldon, a division station, and as the cattle had been in the cars nearly twenty-eight hours, offered to unload them for food, water and rest. Plaintiff refused the offer because he feared other cattle which had just been driven through the unloading chute were afflicted with a contagious disease which might be transmitted to his cattle. Defendant then took the cars containing the cattle on to Versailles and unloaded them. After consulting his lawyer at Versailles, plaintiff decided to take charge of the cattle. He could not get them to Mansfield in time for the sale, but he caused another advertisement to be made there for a sale on September 21st, put the cattle on pasture and feed four days, then shipped them on another railroad and sold them at Mansfield, September 21st.

Defendant argues that the evidence disclosed no cause of action and, therefore, that the court erred in refusing to instruct the jury to return a verdict for defendant. We agree with defendant that in actions for delay in the transportation of live stock, the burden is on the shipper to the end of the case to plead and prove that the cause of the delay was negligence of the carrier.

As is said in Elliott on Railroads, sec. 1424: "The rule in relation to liability for delays in the course of

transportation is not so rigorous as that which governs in cases where goods are lost by theft, fraud or the like. A railroad carrier is not an insurer against the occurrence of delays and hence is not liable where the delay is attributable to misfortune or unavoidable accident. Accidents which prevent the running of trains will, if not due to the fault of the carrier, excuse delay. Where, however, the railroad carrier is guilty of negligence which causes the accident to which the delay is attributable it will be liable for the damages resulting from the delay."

And in Ecton v. Railroad, 125 Mo. App. 223, this court, speaking through ELLISON, J., said: "Negligence is the ground of plaintiff's complaint and if it consists in delay the plaintiff must prove that such delay was the result of negligence on defendant's part. Mere proof of delay is not proof of negligence. There must be something additional which characterizes the delay as culpable."

On the theory that the action before us is for negligent delay or, at least, is thoroughly analogous to an action of that character, we must hold that it comes under the rule to which reference has just been made. Plaintiff contends he has satisfied the rule by showing that the interruption to the transportation was due to a wreck on defendant's railroad. We agree to this contention. "The occurrence of a wreck is *prima facie* the result of the carrier's negligence. This presumption may be overcome by proof that its cause was unavoidable by the exercise of reasonable care, but the burden of proof is shifted to the carrier when the fact is made to appear that the wreck was the producing cause of the delay." [McCall v. Railroad, 117 Mo. App. 477.] This proposition is not disputed, but defendant argues that the *prima facie* effect of the fact of the wreck to establish negligence has been overcome completely by evidence introduced by defendant which shows beyond question, so defendant claims, that the wreck was ac-

cidental and unavoidable. Briefly stated, that evidence
tends to show that, as the train approached the bridge
on a somewhat sharp curve, a piece broke from the
flange of a carwheel, causing the wheel which was
pressing against the outer rail of the curve to climb
the rail, and thus to derail the car, and a number of
other following cars. Further, it appears, the track
was in first-class condition; that indentations in the
rail, were marks of the broken wheel; that the detached
piece was found by the track near these marks, that the
surfaces of the break were clean and fresh, denoting
that the wheel was not impaired by a patent defect and
that the wheel had been inspected before the train
left St. Louis and no defect in it discovered.

It must be conceded this evidence very strongly
tends to support the conclusion that the wreck was ac-
cidental, but it is not conclusive, especially when con-
sidered in connection with evidence adduced by plain-
tiff which just as strongly tends to show that the broken
flange was a result, not the cause of the derailment.
There is evidence that back (east) of the nicks in the
outer rail, the ties for a distance of more than one hun-
dred feet bore marks of carwheels showing that one
or more of the cars must have jumped the track before
reaching the place of the marks on the rail; that some
of the iron braces on the north side of the outer rail
were mashed as they would be had they been struck by
the flanges of derailed carwheels; that for two miles
or more the train which was an extra freight, had been
running down grade and that all the facts and circum-
stances, especially the tremendous damage to the train
and the heavy steel bridge proclaim that the cars jump-
ed the track on account of the highly dangerous speed
of the train when it struck the curve. We believe plain-
tiff's theory of the cause of the wreck is just as rea-
sonable as that of defendant and is supported by sub-
stantial evidence. Indeed, were we sitting as triers of
fact, we would say plaintiff has the better of the con-

test, since it is difficult for us to perceive the ground on which it might be inferred that a latent defect in the carwheel caused the derailment, when the evidence of defendant to the effect that the break disclosed clear and perfect metal shows there was neither a patent nor a latent defect in the wheel. The most that may be said for the evidence of defendant is that it raised an issue of fact for the jury to decide. This being true, the trial court was right in ruling that defendant had failed to establish in law its contention that the wreck was due to accident and not to negligence. The demurrer to the evidence was properly overruled.

At the request of plaintiff, the court instructed the jury on the measure of damages that "in the event your finding is for the plaintiff, you will assess his damages as follows: For loss by shrinkage in weight and value of said cattle, if any, caused by defendant's failure to transport and deliver said cattle as agreed, in such sum as the evidence may show he has sustained, not exceeding eight hundred and ninety-six dollars. And if you further believe from the evidence that the market price at Mansfield, Illinois, on such cattle as the cattle in question declined between the date advertised for the first sale and the date of the second sale, and that the delay in selling said cattle was caused by the negligence and failure of defendant to transport said cattle to Mansfield, Illinois, then you will assess plaintiff's damages because of such decline in the market price of said cattle as the evidence may show he has sustained not exceeding the sum of six hundred dollars. And if you further believe and find from the evidence that the plaintiff suffered loss by reason of incurring expense on the 11th day of September, 1907, in driving said cattle to Versailles, in loading them into defendant's cars, and in driving said cattle back to the farm after they were returned to Versailles by defendant you will assess his damages at such sum as the

evidence may show plaintiff sustained therefor, not ex-
ceeding the sum of thirty dollars."

The objections to this instruction rest on the postu-
late that "this is not a case of delayed shipment, but
a case where there was an attempt at transportation
which entirely failed," and the rule of damages is in-
voked that applies in cases where the carrier refuses
an offered shipment. As we intimated earlier in the
opinion, we think this case is to be treated as one of
negligent delay. Disabled by its own fault from
performing its duty of carrier, defendant forced plain-
tiff to employ another agency to take his cattle to
their destination and, since he acted with reasonable
care and expedition (and of this there can be no doubt),
defendant should reimburse him his actual loss which
consisted of the loss of weight caused by defendant's
wrong, of the loss from the decline of the market and
of the additional expense incurred on account of the
reshipment. The court gave the jury the correct rule.
[Sloop v. Railroad, 93 Mo. App. 605; Gann v. Rail-
road, 72 Mo. App. 34; Wilson v. Railroad, 66 Mo. App.
388; Bank v. Railroad, 119 Mo. App. 10; Perry v. Rail-
road, 89 Mo. App. 49; Wilson v. Railroad, 129 Mo. App.
347.]

The second instruction given at the request of
plaintiff is attacked on the ground that it required of
defendant unqualified proof that the wreck was una-
voidable. The instruction says that "it devolved upon
the defendant to show . . . that said wreck was
unavoidable and occurred without any negligence on
the part of the defendant."

A reasonable construction of this language satis-
fies the rule that defendant was required only to show
that the wreck was unavoidable by the exercise of rea-
sonable care.

An examination of other points made by defend-
ants discloses that the case was tried without substan-
tial error.

Accordingly, the judgment is affirmed. All con-
cur.