# W. F. THERO, Appellant, v. MISSOURI PACIFIC RAILWAY COMPANY, Respondent.

### Kansas City Court of Appeals, June 6, 1910.

1. **CARRIERS: Live Stock: Delayed Shipments: Negligence: Act of God.** Plaintiff, having three horses at Horace, Kansas, and fourteen at Bison, Kansas, delivered the three to defendant and contracted with it to pick up the other fourteen on the way to St. Louis, and to include them in the shipment. After the first three were started, but before the fourteen were received, defendant learned that all of its tracks were so damaged by a storm that it could not put the shipment through on time. Plaintiff was not advised of this condition. Defendant picked up the fourteen horses, but because of washouts caused by said storm, a delay of nine or ten days was caused. Plaintiff suffered a loss because of the delay. He was entitled to recover damages on account of the loss on the fourteen horses received by defendant when it knew that because of an act of God it could not handle them promptly, but he was not entitled to damages on account of the loss on the three horses which were received before defendant was advised that it could not make prompt delivery.

2. ——: ——: ——: ——. A carrier is not excused from liability for the consequences of an unusual delay in transportation caused by an act of God where the disability is existent and known to the carrier and unknown to the shipper, when the shipment is delivered to the carrier.

3. ——: ——: ——. A carrier is not bound to undertake the shipment of goods when disabled by *vis major*. But when the goods are accepted by the carrier without notice to the shipper of its disability, and such acceptance is not accompanied by a stipulation relieving the carrier for delays caused by *vis major*, their acceptance is tantamount to an assurance that they will be delivered within a reasonable time, except for the intervention of excusing causes of subsequent occurrence.

4. ——: ——: ——. Plaintiff claims that as one contract covered the shipment at Horace as well as at Bison, and that as defendant knew of its inability to perform at the time it received the fourteen horses at Bison, defendant's breach is of an entire contract, and it is liable for all damages. It is a sufficient answer to this claim that plaintiff's cause of action is not on said contract, but is in tort.

144 App—11

5. **PLEADING:** Amendment: Liability of Carriers: Contractual or Common Law: Changing Cause of Action.     The cause of action in the original petition in this case is based on a breach of defendant's common law duty and not a breach of contract, and the amended petition did not change the cause of action.

6. **DAMAGES:** Excessive.  Not only was the verdict excessive in allowing plaintiff damages for the loss on the three horses shipped at Horace, but it was further excessive in that the amount of the judgment after plaintiff's remittitur is based on the maximum instead of the minimum estimate of the value of the animals on the St. Louis market had there been no unusual delay.  As the entire excess in the verdict cannot be ascertained from the evidence, the judgment cannot be corrected by remittitur.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell*, Judge.

AFFIRMED.

*Jamison, Hutchison & Ostergard* and *George N. Elliott* for appellant.

(1) The remittitur should have been accepted and judgment entered for the reduced amount. Schergen v. Const. Co., 108 Mo. App. 262; Tilford v. Ramsey, 43 Mo. 420; Higgs v. Hunt, 75 Mo. 107; Rider v. Kirk, 82 Mo. App. 124; Furnish v. Railroad, 102 Mo. 456; Dawson v. Waldheim, 89 Mo. App. 248; 18 Ency. Pl. and Pr., p. 148.   (2) The record in this case being sufficient and the determination of the amount of the damage under the evidence and instructions being a matter of mathematical calculation only, the correction may be made by the appellate court.   Nicholds v. Plate Glass Co., 126 Mo. 55; Burdict v. Railroad, 123 Mo. 221; Higgs v. Hunt, 75 Mo. 107; Rider v. Kirk, 82 Mo. App. 125; Meyer v. Insurance Co., 95 Mo. App. 727; Shuck v. Pfenninghausen, 101 Mo. App. 700; Brown v. St. Louis Transit Co., 108 Mo. App. 316; Moss v. Railroad, 128 Mo. App. 389; 18 Ency. Pl. and Pr., pp. 128 and 134.   (3) A shipper is not required to sue on the

written shipping contract, such written contract being a mere modification in some respects of the obligation of the carrier, imposed on it by law. Lochmer v. Exp. Co., 72 Mo. App. 13; McFadden v. Railroad, 92 Mo. 343; Galliers v. Railroad, 111 Fed. Rep. 849. (4) If the action is in tort for breach of duty imposed by law, it is unnecessary to notice the special contract. Clark v. Railroad, 64 Mo. 446; Garrison v. Transfer Co., 94 Mo. 130. (5) If the carrier wishes to rely on terms of the written contract for any point of defense, he must set it up. Oxley v. Railroad, 65 Mo. 629; Goodman v. Railroad, 71 Mo. 460; Milling Co. v. Railroad, 122 Mo. 258. (6) The following cases show the rule for determining whether a suit is on contract or for a breach of the carrier's common law duty. Clark v. Railroad, 64 Mo. 446; Heil v. Railroad, 16 Mo. App. 363; Railroad v. Higgs, 165 Ind. 694; Rideout v. Railroad, 81 Wisc. 238. (7) A carrier may refuse to receive goods which he cannot transport, without rendering himself liable in damages for such refusal, but having received such goods for transportation the same excuse is not open to him, and he may be held to answer for damages, due to delay, although occasioned by the lack of proper facilities. Faulkner v. Railroad, 51 Mo. 311; Tucker v. Railroad, 50 Mo. 385. (8) A carrier is bound to know when he accepts property for shipment that he has or can obtain facilities for transportation within a reasonable time, and as to any cause of delay which he might anticipate he should then advise the shipper, and if he does not do so, the delay will not be excused. Ayres v. Railroad, 71 Wis. 372; Bussey v. Memphis Co., 4 McCrary 405 (U. S.); Halliwell v. Grand Trunk, 10 Bissel 170 (U. S.). (9) No excuse will prevail when the carrier accepts goods with knowledge of its inability to deliver promptly, without notice to the shipper. 7 Current Law, 537; Hurst v. Railroad, 117 Mo. App. 25; Bushnell v. Wabash, 118 Mo. App. 618; Pinkerton v. Railroad, 117 Mo. App. 288;

Guinn v. Railroad, 20 Mo. App. 453; Schnabe v. Union Line, 13 Mo. App. 159; Gray v. Railroad, 119 Mo. App. l. c. 149; Nelson v. Railroad, 28 Mont. l. c. 326.

*Elijah Robinson* for respondent.

JOHNSON, J.—This suit is for damages alleged to have been caused by the negligent delay of defendant, a common carrier, in the transportation of a carload of horses shipped by plaintiff from Horace and Bison, Kansas, to East St. Louis. The first trial of the case resulted in a verdict of eight hundred dollars for plaintiff. A new trial was granted and at the second trial, plaintiff again prevailed and was given a verdict of fifteen hundred dollars, but the court again interfered and, on the motion of defendant, granted a new trial on the ground that the verdict was excessive. Before the hearing of the motion for a new trial, plaintiff filed a remittitur of one hundred and sixty dollars, but this action of plaintiff did not prevent the court from granting a new trial. Plaintiff appealed and argues that the verdict, though excessive as rendered, was reduced to proper proportions by the remittitur, but offers further to reduce the verdict should we think it still too large.

The cause of action pleaded in the amended petition on which the case was tried is founded on a breach of the common law duty of defendant as a carrier and, consequently, is an action sounding in tort. Defendant argues that the amendment should not have been allowed, for the reason that the cause pleaded in the original petition is founded on a contract for transportation. We dismiss the point with the observation that the cause stated in the original petition is the breach of defendant's common law duty and not the breach of a contract and, therefore, that the amended petition did not change the nature of the action.

Plaintiff, a horse dealer, had purchased eighteen head of horses in Western Kansas and, desiring to ship them to market, engaged a car of defendant to transport them to East St. Louis. Four of the horses were at Horace, a station in the extreme western part of Kansas on defendant's Colorado line, and fourteen were at Bison, a station one hundred and forty-six miles east of Horace and about twenty-six miles west of Hoisington, a division station. The main line of defendant's road ran east from Hoisington through Geneseo and Osawatomie to Kansas City and thence to St. Louis, but a branch line diverged to the southeast and ran to Wichita and Fort Scott and thence on to St. Louis. A son of plaintiff attended to the shipment of the four horses at Horace. He and the agent of defendant executed a written contract of affreightment to cover the whole shipment, provision being made for stopping at Bison to load the remaining fourteen head. The horses were loaded at Horace about ten o'clock p. m., May 28, 1903, and shortly after, started on their journey. At the time defendant received the shipment, it was known to its agent at Horace that the main line was washed out some place east of Geneseo and, accordingly, the contract entered into by plaintiff's son and defendant's agent provided for the shipment going over the branch line via Wichita and Fort Scott. When the train reached Bison, the next morning, the agent of defendant at that point knew both of defendant's lines to the east were blockaded by washouts and high water. Plaintiff was at Bison to attend to loading the fourteen horses. He states he had just come in from interior places and did not know the plight of defendant caused by high waters. He claims the agent did not inform him that the roads were blockaded but allowed him to load the fourteen horses. For some reason, not important, plaintiff unloaded one of the horses which his son had loaded at Horace and left it at Bison. He went on the train to Hoisington where he learned

for the first time that defendant was disabled by floods from going forward with the shipment. Defendant's agent at Hoisington ascertained by telephoning that the Santa Fe railroad was in operation from Great Bend to Wichita and that the car could be sent over that line. Great Bend is ten miles south of Hoisington and the two places were connected by a branch line of defendant. Accordingly, the car was run down to Great Bend and the horses were shipped over the Santa Fe road to Wichita, where they were delivered to defendant and carried to St. Louis where they arrived June 11th. In the usual course of transportation, the horses should have arrived in St. Louis nine or ten days before they did. They cost plaintiff $1677 at the shipping points and, had they not been delayed in transportation, would have sold on the market—so plaintiff states—at from $2100 to $2300. They were so damaged that they sold for only $1020. Plaintiff incurred eighty dollars additional expense on account of the delay.

The principal defense is that the floods which interrupted traffic on defendant's roads were an act of God and that defendant should not be held accountable for damages caused thereby. It is conceded by plaintiff, in effect, that defendant was put out of business by an extraordinary outburst of nature, but plaintiff contends that defendant knew of its inability to complete the transportation when it received the shipment and the rule is invoked that a carrier will not be excused from liability for the consequences of an unusual delay in transportation caused by an act of God, where the disability is existent and known to the carrier at the time the property is received for shipment and the carrier fails to advise the shipper of the existing conditions and to stipulate against their consequences.

The soundness of this rule cannot be questioned. The common law duty of a carrier to receive goods offered for shipment does not obtain where the carrier has been disabled by *vis major* from performing that

duty. In such cases the carrier may refuse to receive the property, or it may accept it on stipulation that the transportation will be undertaken subject to the delays · caused by the results of *vis major*, "but the acceptance of goods for shipment without such stipulation or without notifying the shipper of the fact that they can not be promptly delivered is tantamount to an assurance that they will be delivered within a reasonable time, except for the intervention of excusing causes of subsequent occurrence." [Russell Grain Co. v. Railway, 114 Mo. App. 488.]

The application of these rules to the facts in hand leads to the conclusion that with respect to the three horses shipped at Horace, defendant cannot be held liable for the delay that occurred for the reason that the delay was caused by the act of God and the disablement of defendant's Wichita line did not occur until the transportation had begun. The argument of plaintiff that the contract for the shipment did not become complete until the horses were loaded at Bison and that defendant then knew of its disability is rejected for the reason (if for no other) that the cause of action pleaded in the petition is not on that contract but is in tort and, therefore, the issue as to the Horace shipment was the common law duty defendant assumed by receiving the horses at Horace and undertaking to carry them to St. Louis. Since defendant had no knowledge either express or constructive at that time that it would be unable to perform its duty on account of a subsequent manifestation of a superior force, it could not be guilty of any breach of duty in receiving the property for transportation. It is equally clear that in giving proper consideration to the evidence of plaintiff we must hold that an issue of fact is presented with respect to the shipment of the fourteen horses at Bison. Still bearing in mind that the action is *ex delicto* not *ex contractu*, the duty of defendant with respect to that shipment is to be measured by the conditions that ex-

isted when the property was accepted at Bison and not by those obtaining when the Horace shipment was accepted. Defendant knew it could not complete the transportation in the usual time when it accepted that shipment and, since it did not notify plaintiff of its disability nor stipulate against the consequences thereof, it must be held liable for the damages sustained by plaintiff on account of the unusual delay in the transportation of that shipment.

Clearly the verdict was excessive. Not only was plaintiff permitted to recover on account of the Horace shipment, but the assessment of damages to the Bison shipment was too high. Plaintiff should have been held to his minimum estimate of the value of the animals on the St. Louis market had there been no unusual delay. Instead, he based his remittitur on his maximum estimate of value. Other objections of defendant to the instruction on the measure of damages are answered in our opinion in the recent case of Hahn v. Railroad, 141 Mo. App. 453.

In the view of the case we have expressed herein the amount of the entire excess in the verdict cannot be ascertained from the evidence, and it follows that we cannot accept the suggestion of plaintiff that he be allowed to enter a further remittitur. We can do nothing but approve the action of the trial court in setting aside the verdict and granting a new trial. Accordingly the judgment is affirmed. All concur.