JOHN B. HENRY, APPELLANT, v. WALTER TINSLEY, RESPONDENT.—218 SW (2d) 771.

Springfield Court of Appeals. March 2, 1949.

Rehearing Denied March 26, 1949.

*Burden & Shortridge* for appellant.

*Roy Coyne* and *Max Patten* for respondent.

166

McDOWELL, J.—This is an appeal from the action of the trial court is sustaining a motion for new trial, filed by the defendant.

The action was filed in the Circuit Court of Jasper County, Missouri, June 5th, 1947. Plaintiff claimed $1250.00 damages against defendant for injury to his automobile alleged to have been caused by the negligence of the defendant in running into and damaging plaintiff's car while parked on a public street in Joplin, Missouri. The cause was tried before a jury in Division No. 2, of the Circuit Court, on the 22nd day of October, 1947, resulting in a judgment for plaintiff for $1,000.00. A motion for a new trial was filed by the defendant on the 27th day of October, 1947, which motion was sustained by the court on December 11th, 1947. From the action of the court in sustaining the motion for new trial, plaintiff appeals to this court.

Two grounds of error are relied upon by plaintiff for reversal: First, plaintiff complains that the trial court erred in sustaining defendant's motion for new trial because of error committed by injecting liability insurance protection into the case; and second, by finding that the verdict was excessive.

The evidence in this case shows that the plaintiff was the owner of a 1941 Buick Sedan automobile, which was parked in front of his home on West Fourth Street in the City of Joplin, Missouri; that on the 30th day of May, 1947, defendant, driving his 1946 Oldsmobile, ran into and against plaintiff's car, causing the damage complained of. It is admitted that plaintiff's car was parked, at the time of the collision, in violation of a city ordinance.

During the voir dire examination of the jurors the following questions and answers were given: "Mr. Shortridge: Q. Do any of you gentlemen hold insurance with the Car and General Insurance Company of New York?

"Mr. Patten: I object to that as attempting to convey to the jury that there is insurance involved in this particular case, and I ask that this jury panel be discharged.

"Mr. Shortridge: That is a proper question. Stockholders, policy holders or agents or employees.

"The Court: I think that is right. Objection overruled.

"Mr. Shortridge: Q. Are any of you gentlemen stockholders in the Car and General Insurance Company of New York, or did any of you ever work for them, or have friends working for them? . . . .

"Mr. Patten: Mr. Cunningham, what kind of insurance do you write?

"Mr. Cunningham: General Insurance. . . .

"Mr. Shortridge: I will ask you whether or not you are prejudiced against auto liability insurance companies?

"Mr. Patten: I object to that question, clearly out of line, whether he has any prejudice for or against auto liability insurance companies, and ask that the jury be discharged. That is certainly not a proper question. . . .

"The Court: Objection overruled."

In the trial of the case the plaintiff was testifying and gave the following answers to questions asked by his attorney:

"Q. Now, after the accident did you have any conversation with the defendant, Mr. Tinsley? A. Yes, sir, I did. Mr. Tinsley came over on Saturday, the next day after this accident happened. . . .

"Q. Did he make any admissions or statements about how the accident occurred? A. Well, I didn't hear him state directly as to a statement of how the accident did happen. He didn't tell me how it happened. .

"Q. You had a conversation the next day, you say? A. Yes, sir.

"Q. Would you tell the jury what that conversation was, what it consisted of? A. Well, Mr. Tinsley came over to my house, and I talked to him, and he said not to worry about the car damages and the accident, that the cars would be replaced, and he said his insurance company. . . .

"Mr. Patten: Just a minute.

"The Court: Yes, stricken.

"Mr. Patten: I object to that question, and I ask that the jury be discharged.

"The Court: That statement will be stricken from the record, and the jury will disregard it.

"Mr. Patten: I further ask that the jury be discharged.

"The Court: The request will be refused.

"Mr. Burden: Don't refer to . . . May I speak to him?

"The Court: Yes. . . .

"Q. Did he make any statements about whose fault it was? A. Well, no, sir, he didn't. Obviously, why, of course, we know."

The record does not disclose that there was any liability insurance in this case.

Plaintiff testified that his car was in perfect condition so far as he knew and that he had had no trouble with it; that he paid $1500.00 for the car as a used car; that he thought the value at the time of the injury was about $1750.00 or $1800.00. The court permitted plaintiff to testify that he paid a repair bill to the Sheward Motor Company of $530.25, over the objection of the defendant that there was no showing that the repairs were reasonable and necessary. Plaintiff also testified that everything underneath the car was damaged, the back end was caved in, the fenders and the turtle shell and the differential were all damaged and bent out of shape. Plaintiff testified that it would still cost about $40.00 to repair the transmission and that there were other repairs yet to be made. He named such repairs to be made as repairing the left rear wheel, the bumper guards that go on the rear bumper and parts of the transmission. The estimated cost of repairing the automobile by the garage was $549.85.

Ed Michaels, manager of the Sheward Motor Company, the Buick Agency in Joplin, gave the following testimony on the amount of damages:

"Q. Now, with regard to about the 30th of May of last year, what would be a fair and reasonable market price for that car? A. About $1500.00. They were selling for that at that time, that is, if they are clean, and he had a clean car.

"Q. By 'clean' what do you mean? A. A nice car, low mileage.

"Q. And did you see his car after it was wrecked? A. Yes, . . .

"Q. Now, after it had been wrecked and before it was repaired, what would be the fair market value of the car? A. Oh, I would say in the neighborhood of $500.00 or $600.00."

At the close of the plaintiff's case defendant moved the court to direct a judgment for defendant on the grounds of contributory negligence, which motion was refused and, at the close of all the testimony defendant, by motion requested the court for judgment because of contributory negligence on the part of plaintiff and because of plaintiff's admitted violation of a city ordinance.

In defendant's motion for a new trial he set out grounds complaining of the wrongful admission of evidence and of errors of the trial court in failing to sustain his motions for a directed verdict at the close of plaintiff's case and at the close of all the testimony, besides the points upon which the court granted the motion for a new trial, and respondent brings those errors to the attention of the appellate court in this appeal.

The trial court ordered a remittitur of $300.00, which plaintiff refused and the court sustained a motion for a new trial on December 11th, 1947. The court's order sustaining said motion is as follows:

"The Court: The motion for new trial is sustained for the reason that the Court is of the opinion that error was committed in not sustaining the objection of the defendant to the testimony of the plaintiff, that the defendant had told him in effect not to worry about the accident because he had insurance. This matter, in connection with the prior objection of the defendant that the proper foundation had not been laid by the plaintiff for inquiring of the members of the jury panel as to whether or not they were interested in a certain insurance company, leads the court to believe that under the decisions of this State the court was in error in not discharging the jury."

The court had already ordered a remittitur on the theory that the above mentioned error would have been, at least to some extent, mitigated by a reduction of the amount of damage which the court felt should have been done under the testimony in the case.

It is true that the testimony of the plaintiff's witnesses was to the effect that the value of the car before the accident was approximately $1500.00, and after the accident was approximately $500.00, which would have permitted the jury to have found for the plaintiff in the sum of $1000.00. However, the testimony also showed that repairs were made in an amount of approximately $500.00, with some repairs not yet made, and that the car would not be of full value even if the repairs were fully made. The court felt that $700.00 would cover the cost of repairs to the damage and that the $1000.00, found by the jury, was unreasonable.

"Mr. Shortridge: I would like to ask the Court a question. Does the Court feel that there was any indication of bad faith on the part of the plaintiff and his attorneys in injecting the insurance matter into the case?

"The Court: No. It was my impression that when the plaintiff blurted out the fact that the defendant had said he had insurance, that it was something that was inadvertently done, and there was no bad faith in that instance on the part of the plaintiff's counsel.

"Of course, the inquiry as to insurance while the jury was being questioned was deliberate, of course. Of course, it was my idea that if the correct insurance company was inquired about that it was not necessary to lay any foundation.

"That matter, in connection with the other matter, over the objection of the defendant, I think would justify the sustaining of the motion for new trial."

Appellant, in his first assignment of error, contends that the trial court erred in sustaining defendant's motion for new trial because of error committed by injecting liability insurance protection into the case.

During the voir dire examination of the jurors in this case plaintiff's counsel inquired of the jury, "Do any of you gentlemen hold

insurance with the Car and General Insurance Company of New York?'' To this question defendant objected on the grounds that plaintiff's attorney was attempting to convey to the jury that there was insurance involved in this particular case and asked that the jury be discharged. Plaintiff's attorney insisted that it was a proper question and mentioned stockholders, policy holders or agents or employes, and the court ruled, ''I think that is right. Objection overruled.'' Then plaintiff's attorney asked the jury: ''Are any of you gentlemen stockholders in the Car and General Insurance Company of New York, or did any of you ever work for them, or have friends working for them?'' And if they were prejudiced against liability insurance companies. Defendant objected to these questions and answers and moved to discharge the jury and the court overruled the objection.

Plaintiff was then put on the stand and asked if after the accident he had had a conversation with the defendant and if the defendant made any statement and the plaintiff made the following answer: ''Well, Mr. Tinsley came over to my house, and I talked to him, and he said not to worry about the car damages and the accident, that the cars would be replaced, and he said his insurance company * * *.'' At this point objection was made, which was sustained by the court and plaintiff was not permitted to finish his answer. Plaintiff then testified that the defendant made no statements as to whose fault it was.

The trial court found that he had committed error in not sustaining defendant's objection to the above voir dire examination and to plaintiff's statement in the testimony as to insurance and the court said that he believed he had committed error in not discharging the jury.

In Reich v. Thompson, 142 S. W. 2d 486, loc. cit. 491, the court stated: ''It has been pointed out that a different rule obtains where a motion for a new trial has been sustained. 'In examining the law on this subject, care should be taken not to confuse the language of courts in approving the action of a trial court in refusing a new trial with language applicable to cases where a new trial had been granted.' * * *. Appellate courts are also more liberal in upholding the trial court's action in sustaining a motion for a new trial than in denying it.'' In a late opinion of this court, Case No. 6776, Barnes v. Chism, et al., not yet reported, Judge Vandeventer reaffirms the law as set out above. In his opinion he states: ''Appellate courts and trial courts work under different rules. Appellate courts do not weigh the evidence in considering the excessiveness or inadequacy of verdicts, whereas it is the peculiar province of the trial courts to weigh the evidence and grant or refuse new trials for excessiveness or inadequacy as in the exercise of a sound discretion they may deem just.'' In Loftus v. Metropolitan St. Ry. Co., 119 S. W. 942, loc.

cit. 944, Judge Graves, speaking for the court, laid down the following proposition of law: "The further contention is made that this court should not disturb the discretion exercised by the trial court in granting the new trial. In other words, that the granting of a new trial rests within the sound discretion of the trial court. In the broad sense the granting of a new trial does rest within the sound discretion of the trial judge, and this discretion, like all judicial discretions, should not be disturbed, when properly exercised. We are cited to the recent cases of Rodan v. Transit Co., 207 Mo., loc. cit. 406, 105 S. W. 1061, and Seeger v. Silver Co., 193 Mo. loc. cit. 407, 91 S. W. 1030, as stating correct rules upon the question. In the latter case Judge Marshall said: 'The rule is now well settled in this state that this court will not reverse the action of a trial court in granting one new trial, unless the case is such that no verdict in favor of the party to whom the new trial is thus granted could, under any circumstances, be permitted to stand.' And in the former Judge Lamm said: 'In the first place, in limine, it must be assumed as a commonplace of the law, arising to the level of an axiom, that the granting of a new trial rests within the sound discretion of the trial court, and its action in that behalf will not be disturbed on appeal unless it appears that its discretionary power was abused, i. e., exercised in an arbitrary or improvident manner.' " In Maurizi v. Western Coal & Mining Co., 11 S. W. 2d 268, loc. cit. 274, the court makes the following statement: "If it appears from the record that counsel had reasonable cause to believe an insurance company, or an insurance agency, was interested, and that he acted in good faith in making the inquiries, the sound discretion of the court in controlling and directing the examination will be sustained." The court again recognizes the rule that the trial court has a sound discretion in awarding a new trial. This seems to be the law in Missouri.

In Maurizi v. Western Coal & Mining Co., supra, loc. cit. 274, the court gives a well reasoned discussion of the law as follows:

"On the voir dire examination of the panel of 18 jurors, counsel for plaintiff inquired if either was connected with United States Fidelity & Guaranty Company or Thomas McGee & Son, agents of that company in Kansas City. Defendant objected to the inquiries as prejudicial, on the ground said insurance company was not the defendant, and moved the discharge of the jury. Thereupon the court and counsel for plaintiff, out of the hearing of the jury, inquired of counsel for defendant if he represented said company and it was interested in the case. He answered that he was attorney for the company, but did not answer whether he represented said company in the case, or whether said company was interested in the case.

"It is contended no foundation was laid for the questions outside of the presence of the jury, or at any other time. No such assignment of error is found in the motion for new trial, and this was not

the objection made to the question. Counsel did not claim the insurance company was not interested in the defense, and did not claim that McGee & Son were not the agent of the company, and does not so claim at this time. The contention amounts to a claim of error, if the members of the panel are so questioned before counsel for plaintiff inquires of counsel for defendant, out of the hearing of the jury, whether or 'not the insurance company is interested in the defense. If the insurance company is interested, the defendant cannot be prejudiced if plaintiff's counsel never makes such inquiry. We know of no rule requiring a foundation for the examination of members of the panel as to their qualifications to serve as jurors. The foundation is the right of a litigant to know the relation of the members of the panel to the parties and those interested in the result of the case. Counsel for plaintiff is not required to prove that an insurance company, or insurance agency, is interested before inquiring of the members if they are connected with either. He is presumed to be acting in good faith when he makes the inquiries. If it appears from the record that counsel had reasonable cause to believe an insurance company, or an insurance agency, was interested and that he acted in good faith in making the inquiries, the sound discretion of the court in controlling and directing the examination will be sustained. On the other hand, if it should appear from the record that counsel has abused the privilege, and the inquiries were not for the purpose of being able to intelligently make peremptory challenges, the action of the court in permitting the inquiries would not be sustained. The court should require counsel for plaintiff to inquire of defendant's counsel, out of the hearing of the jury, whether or not the insurance company is interested in the case, and, if so, the name of the company. However, it does not follow that a failure to do so would result in convicting the court of error.''

An examination of the authorities reveals that the court properly declared the law in the above quotation. The court lays down the rule that the trial court should require counsel for plaintiff to inquire of the defendant's counsel, out of the hearing of the jury, whether or not the insurance company is interested in the case, and, if so, the name of the company. This unquestionably is the proper rule to follow as revealed in almost all the cases decided since the above case was decided.

An examination of the case before us shows that at no time did plaintiff's counsel ever undertake to find out if there was any insurance in the case, either before he asked the questions on the voir dire examination or afterward. He led the court to believe that the questions were proper and the court overruled the objections. As quoted above, ''If it appears from the record that counsel had reasonable cause to .believe an· insurance company, or an insurance

agency, was interested, and that plaintiff's counsel had acted in good faith in making the inquiries, the sound discretion of the court in controlling and directing the examination will be sustained.'' We submit that there is no testimony in this case to show that an insurance company was defending in the case or interested in it. We believe that we should follow the law as declared by the same court when it said, ''On the other hand, if it should appear from the record that counsel has abused the privilege, and the inquiries were not for the purpose of being able to intelligently make peremptory challenges, the action of the court in permitting the inquiries would not be sustained.''

Certainly the court, in granting the new trial in this case, was justified in finding that the record was silent as to the interest of the insurance company inquired of by plaintiff's counsel on the voir dire examination; that plaintiff's endeavor to find out if anyone was prejudiced against liability insurance was not made in good faith and that such conduct on the part of plaintiff's counsel in qualifying the jury on voir dire examination violated the rule that plaintiff's counsel is required to act in good faith in making such inquiries. Certainly the court, in its discretion, had ample testimony to award the new trial when this is connected with the further attempt of plaintiff to inject insurance into the case by answering that plaintiff had made a statement that he had insurance when such statement was not a part of any admission against interest but solely was made for the purpose of showing that an insurance company was interested and would pay the judgment.

The courts hold that broad latitude should be extended to the parties in the qualification of the jury and that there is no rule governing such voir dire examination, yet the plaintiff must act in good faith. No foundation need have been laid to inquire about insurance companies if, in fact, there was insurance in the case, or if it appear from the record that plaintiff had good cause to believe an insurance company was interested. Yet in this case there is nothing to justify the court in believing that the plaintiff did act in good faith. The question of good faith is a question of fact and the discretion of the trial court in passing upon the fact of good faith in the case will not be disturbed when the evidence justifies and shows that the court has not abused such discretion.

The appellant relies upon Vesper v. Ashton, 118 S. W. 2d 84, to sustain his contention that the court erred in awarding a new trial. This case properly declares the law and follows the rule that whether or not a jury should be discharged when insurance is referred to depends upon the good or bad faith of the plaintiff's attorney in asking the question. The court made the following statement, page 89: ''Good faith is a question of fact and the legal presumption as to knowledge of the law has no place in determining the question. * * *

The court in the case at bar should have followed the usual practice of vigorously instructing the jury orally upon the subject immediately upon the mentioning by the witness of insurance. * * *.''

It will be noted in this case that the court not only did not vigorously instruct the jury not to consider the question of insurance but was led by plaintiff's counsel to overrule an objection and to hold that the questioning was proper. Therefore, we think the court, in the exercise of his discretion, was justified in awarding a new trial.

Appellant cites Jones v. Missouri Freight Transit Corporaton, 40 S. W. 2d 465. In this case proper foundation was laid for the introduction of the question of insurance by inquiring of defendant's counsel, outside the hearing of the jury, as to whether or not the insurance company was interested and, by so doing, showed his good faith and follows the rule of well established law in Missouri that the basis of injecting insurance into any law·suit is the good or bad faith of the counsel offering the testimony.

Appellant cites Garvey v. Ladd, 266 S. W. 727. This case is clearly distinguishable from the one at bar in that the question of insurance was a part of a statement made by the defendant in admission of liability. The rule of law in Missouri is clearly followed that where the statement is admissible for other purposes to prove some issue in the case and contains in the statement reference to insurance, the testimony is admissible even though the reference to insurance may be harmful. However, this case is no authority for condemning the trial court in the case at bar because the testimony here is not connected with any statements admissible upon any issue in the case.

Appellant cites Steinman v. Brownfield, 18 S. W. 2d 528. In this case the statement as to insurance, because it was coupled with an admission of liability, is distinguished from the case at bar, and the court lays down the same rule, as in all the other cases, that it is a question of good faith. The court states the rule thusly: ''Generally speaking, the cases hold that it is competent to show that there is liability insurance where such fact goes to prove any material issue properly in the case.'' And in Fortner v. Kelly, 60 S. W. 2d 642, loc. cit. 644, the court makes the following statement: ''The courts of this state are of a unit in the conclusion that the fact of insurance in a liability case is prejudicial to a defendant. Our courts are further in harmony in the conclusion that, although prejudicial to defendant, there are legal grounds wherein the fact is admissible. This is especially true in examination on the voir dire.

''Barnett, C., in the opinion in Wendel v. City Ice Co., reported in 224 Mo. App. 152, 22 S. W. (2d) 215, 218, well stated the rule as to examination on the *voir dire* as follows: 'If the record shows that an insurance company is interested in the result, or that plaintiff has reasonable cause to believe that this is so, then legal grounds exist for conducting the examination on the voir dire.' ''

This seems to be the law in Missouri and applying this rule to the case in question it appears there is nothing in the record to justify plaintiff's counsel in asking the questions as to insurance, nor is there anything connected with the case to show that plaintiff's counsel had reasonable grounds for his action. Therefore, the trial court, in the exercise of his discretion, had the right to grant a new trial.

There is nothing in this case that justifies appellant's action in qualifying the jury. The case of Nixon v. Hill, 52 S. W. 2d 208, is distinguished from the case at bar in that insurance was brought into the case as a part of a statement admissible as being against interest. We have stated the rule on that subject and the case is no authority in the case at bar.

In Olian v. Olian, 59 S. W. 2d 673, 677, the court quotes from Edwards v. Smith (Mo. App.) 286 S. W. 428, 430, where it is said: " 'But the fact that an insurance company is protecting the defendant, or has assumed the defense of the case, may legitimately come to the knowledge of jurors, if warranted by the developments of the trial or the particular circumstances of the case. In other words, if the incident of an insurance company being interested in the case becomes a constituent part of plaintiff's proof, there is no reason for concealment of that fact. * * * The test would seem to be largely a question of good faith.' And in Hill v. Jackson (Mo. App.) 272 S. W. 105, 106, the court said: 'The courts have repeatedly inveighed against the conduct of a plaintiff in unnecessarily getting before the jury the fact that there is liability insurance.' The court and counsel should, however, keep in mind that the introduction of such highly prejudicial evidence is a serious and hazardous matter and is to be avoided rather than sought for. The plaintiff should take care not to introduce such prejudicial evidence unless there is a reasonable necessity for so doing. He should never try his case on the theory that, if he can in some way get the jury to understand that an insurance company will ultimately have to pay the damages assessed, he is sure to win his case and get a big verdict. The jury should be fed with food and not with poison. What was wisely said by this court in the recent case of Hannah v. Butts, 51 S. W. (2d) 4, 7, will bear repetition here, to wit: 'It seems to be the impression of the bar that the fact that the liability of a defendant in a tort action is covered by insurance will, in the minds of the average jury, not only justify a verdict for plaintiff but a very generous assessment of damages as well. The verdicts in many cases warrant that view. * * * * * .' ' "

We find that as far as the record in this case was concerned there was not the slightest excuse or justification for plaintiff's counsel to inquire of the jury on voir dire examination about an insurance company. Neither was there any excuse for the plaintiff to volunteer in his testitmony that the defendant was covered by insurance.

Hence, the trial court was justified in the exercise of sound discretion in awarding defendant a new trial.

Under point 2 of appellant's assignment of error he complains of the action of the trial court in awarding defendant a new trial because the damages were excessive where plaintiff refused to make remittitur of $300.00.

If the excessive verdict was the only error shown by the record such error could be cured by the court ordering a remittitur. However, the plaintiff would not be bound to accept such remittitur and thus a new trial would have to be ordered. Olian v. Olian, supra. There is no contention here that the verdict was excessive because of the pleadings or the instructions of the court, therefore, we shall examine the facts to see whether or not the trial court was justified in its discretion in finding that the verdict was excessive.

The facts show that the jury awarded plaintiff $1000.00 damages for the injury to his automobile. The award was based upon the following facts: The court permitted plaintiff to testify that he purchased the car for $1500.00, and that it was a used car; that he believed that the car was worth, at the time of the injury, $1750.00 to $1800.00. Upon objection to the plaintiff's testifying as to value without qualification, the court remarked that the owner of the car could testify as to its value. Then plaintiff testified that he had the car repaired at the Sheward Motor Company and that the bill for such repairs was $530.25. This was done over the objection of the defendant because it was not shown that the repairs were reasonable and necessary. The plaintiff then testified that his car was damaged underneath, the back end was caved in, the fenders were damaged and the turtle shell, and that the differential was bent out of shape. He testified that the above bill did not cover the cost of repairing the transmission, which would cost an additional amount of $40.00. Plaintiff also testified that there were additional repairs necessary to the left rear wheel and the bumper guards on the rear bumper. There was introduced an estimated cost made out by the garage of $549.85, for repairing the car.

Ed. Michaels, the manager of the Sheward Motor Company, testified that the reasonable market value of the car was $1500.00, and he said the car would have to be a nice car, of low mileage; that the reasonable market value after the wreck was in the neighborhood of $500.00 or $600.00.

The court found that the verdict of $1000.00 was excessive from this testimony. He ordered a remittitur of $300.00, which plaintiff refused. The court stated that he felt that $700.00 would cover the cost of repairs and damage to the car and that $1000.00 was unreasonable. The court stated that he believed the errors committed in

injection of insurance into the case caused the excessive verdict. If the court committed error in permitting the question of insurance to be wrongfully injected into the case and the harmful effect of such evidence is reflected in the size of the verdict the court certainly would be warranted in ordering a remittitur, and in case of refusal by the plaintiff to accept such order, to grant a new trial. In Olian v. Olian, supra, loc. cit. 678, the court stated: ''The only other question, therefore, is whether the error in admitting the evidence heretofore discussed is shown to be harmful. It is insisted that the verdict is excessive. As we have said, defendant's liability stands conceded, and the harmful effect of the evidence admitted can only be reflected in the size of the verdict.'' That is true here. The only competent evidence before the jury on damages, outside of showing the physical injury to the car itself, was the testimony of the manager of the garage to the effect that if the car was a clean car, meaning a nice car of low mileage, it would be worth $1500.00, and after the collision, $500.00 or $600.00. The burden of proof was upon the plaintiff to show the damages and the positive proof would be that, after the wreck the car was worth $600.00, and, therefore, the damage could not have been more than $900.00. If the repairs to the car were considered by the jury the estimated damage of the total repairs was $549.85. On this point we have no hesitancy in saying that the verdict of $1000.00 was certainly large, if not clearly excessive. Following the rule that the sound discretion of the trial court should not be disturbed unless the testimony clearly shows that he abused such discretion, we find that the court was justified in finding from the evidence that the judgment was excessive and that he was justified in ordering a remittitur under the facts in the case, and in case of plaintiff's refusal to accept the order of remittitur, in ordering a new trial. True enough, this court could correct that error by ordering a remittitur, if there were not other errors in the matter, but under our view of the case there were other errors in the record which justified the court in granting a new trial. Therefore, we hold that the trial court was justified in ordering a new trial on the ground of excessive verdict and it is our opinion that the appellant is not entitled to a reversal of this cause on his second alleged error.

The respondent has assigned additional grounds for sustaining the judgment of the trial court in awarding a new trial, from the points relied upon by appellant. Respondent's first additional assignment of error is that the court should have sustained his motion to dismiss plaintiff's cause of action made at the close of plaintiff's case because of plaintiff's contributory negligence. Respondent's fifth additional assignment of error is that the court erred in not sustaining his motion for directed verdict at the close of all the testimony because the testimony showed plaintiff was guilty of violating

a city ordinance which is negligence per se, therefore, contributorily negligent. We will consider these objections together.

Under the evidence it is admitted that at the time of the injury appellant's car was parked on a city street in violation of, a city ordinance, which fact makes plaintiff guilty of negligence per se.

The question presented by the respondent's motions for dismissal of appellant's cause of action at the close of plaintiff's case and at the close of all the evidence because of contributory negligence, is whether, admitting the truth of all of the evidence given in favor of plaintiff, together with such inferences as may be reasonably drawn therefrom, there is enough evidence to sustain the verdict for plaintiff and against defendant. Becker v. Aschen, 131 S. W. 2d 533. Such motions should be sustained only when the facts and evidence and the legitimate inferences to be drawn from such facts leave no room for reasonable minds to differ. Young v. Wheelock, 64 S. W. 2d 950. Causal connection between negligence and injury is not required to be established by direct evidence, but may be established by proof of facts and circumstances from which such connection may be reasonably inferred. Long v. F. W. Woolworth Co., 109 S. W. 2d 85. Plaintiff was admittedly negligent but, under the facts in this case, we cannot hold that such negligence contributed to and was a part of the cause of the injury; and certainly we cannot hold that it was the sole cause of the injury. If we were to find that plaintiff's negligence in failing to comply with the city ordinance was the sole cause of the injury, then plaintiff could not recover. Likewise, if we were to find that plaintiff's negligence contributed to and was a part of the cause, he could not recover. But under the testimony which discloses that there was a wide city street, that it was lighted and that the defendant had ample room to pass, had he been exercising that degree of care required by law, the jury could well have found under the facts that, although plaintiff was negligent in leaving his car on the street, negligence did not cause the injury or did not even contribute to the injury but that defendant's negligence was the sole cause of the injury and for which negligence he would be liable. Therefore, under proper instructions of the court and under the testimony in this case, the question of the liability of the defendant was a question of fact for the jury. So far as this appeal is concerned there were no objections made to the instructions of the court and we assume that they properly declared the law. There was no error under these two assignments and the action of the trial court was proper.

Respondent's assignment of error numbered six, in which he claimed the court was in error in permitting plaintiff to testify as to future repairs and the cost thereof, is well taken, yet this matter can be corrected in the retrial of the case.

It is unnecessary for us to comment further on respondent's seventh assignment of error since it has been covered in the discussion of appellant's assigned errors.

We believe the cause should be affirmed and remanded for further action of the trial court. It is so ordered. *Vandeventer, P. J.,* concurs; *Blair, J.,* dissents in separate opinion.

## BLAIR, J., DISSENTS IN SEPARATE OPINION.

It is with regret that I am unable to concur in the opinion of Judge McDowell. I agree that the trial judge, if so advised, had the right, on the evidence before him alone, to hold that the verdict of the jury was excessive; but it is evident that, in this case, the trial judge concluded that error was committed by him in refusing to discharge the jury, in addition to the claimed excessiveness of the verdict, after it appeared to him that the jury was improperly informed that some liability insurance company was interested in the amount of the verdict.

In his opinion, Judge McDowell says, as follows:

"Mr. Shortridge: I would like to ask the Court a question: Does the Court feel that there was any indication of bad faith on the part of the plaintiff and his attorneys in injecting the insurance matter into the case?

"The Court: No. It was my impression that when the plaintiff blurted out the fact that the defendant had said he had insurance, that it was something that was inadvertently done, and there was no bad faith in that instance on the part of the plaintiff's counsel."

Thus it is evident that the inquiries criticised were not due to bad faith on the part of plaintiff or his attorneys, and that the trial judge must have found as a fact, and without any evidence whatever, that he erred in not discharging the jury anyway, and granted a new trial to "mitigate" the claimed excessiveness of the verdict. If he had originally disturbed the verdict on the ground of excessiveness alone, he could not well be criticized for so doing.

The present attitude of the Supreme Court en Banc is particularly apparent in the case of Maurizi v. Western Coal and Mining Company, 11 S. W. (2d) 268. In that case Judge Gantt said:

"*We know of no rule requiring a foundation for the examination of members of the panel as to their qualifications to serve as jurors. The foundation is the right of a litigant to know the relation of the members of the panel to the parties and those interested in the result of the case. Counsel for plaintiff is not required to prove that an insurance company, or insurance agency, is interested before inquiring of the members if they are connected with either. He is presumed to be acting in good faith when he makes the inquiries.* If it appears from the record that counsel

had reasonable cause to believe an insurance company, or an insurance agency, was interested, and that he acted in good faith in making the inquiries, the sound discretion of the court in controlling and directing the examination will be sustained. *On the other hand, if it should appear from the record that counsel has abused the privilege, and the inquiries were not for the purpose of being able to intelligently make peremptory challenges, the action of the court in permitting the inquiries would not be sustained.* The court should require counsel for plaintiff to inquire of defendant's counsel, out of the hearing of the jury, whether or not the insurance company is interested in the case, and, if so, the name of the company. *However, it does not follow that a failure to do so would result in convicting the court of error.''* (Emphasis ours.)

In Olian v. Olian, 59 S. W. (2d) 673, Judge Sturgis, a former judge of this Court, with the approval of the other Commissioners and all of the Judges of Division One of the Supreme Court, who sat in that case, said:

''We think it should be taken as settled in this state that, when it comes to qualifying and selecting a jury to try a case, the plaintiff has a right to ascertain in a proper manner whether or not an insurance company, by reason of its interest in the result, is actively conducting or assisting in the defense of the suit, and, if so, to properly question the jurors as to their relationship to or interest in the defending company. To this end the plaintiff should be given a reasonably wide latitude in making inquiry and having the jurors answer on oath.''

In paragraph 7 l. c. 676 of 59 S. W. (2d), Judge Sturgis discusses at considerable length the law respecting the admission of such evidence. That paragraph is too long for quotation in this dissenting opinion; but the reader is respectfully referred to it.

True, the judgment in that case was reversed by the Supreme Court; but it was reversed because the Supreme Court *itself* held that such verdict was *excessive* and its opinion did not hold that the trial court could or should have reduced the verdict of the trial jury by a remittitur.

Even an appellate court could not order a remittitur solely in an endeavor to ''mitigate'' other error or errors. In 4 C. J., Section 3137, page 1139, it is said:

''An appellate court will refuse to affirm an excessive judgment on condition that the prevailing party release or remit the portion that is excessive where it is not apparent from the record what the amount of the excess is and for what amount the correct judgment should be.''

If an appellate court cannot reduce a verdict by a remittitur, certainly a trial court cannot do it. I am not at all in favor of counsel

for plaintiff in damage suits injecting into such a case the fact, if it be a fact, or a mere suspicion, that the defendant has been far-sighted enough to protect himself against loss, by taking out liability insurance; but my former opinion should have no weight in the disposition of this case.

While the law laid down in past years, and, as cited by Judge McDowell, seems to condemn the practice of getting such evidence before a jury by counsel or his client, without a showing of good faith, it seems to me in more recent years the Supreme Court has somewhat relaxed that rule, even where there is no evidence of good or bad faith on the part of counsel for plaintiff, or the client himself.

The appellate courts of this State themselves have often reduced a verdict, which appeared to *them* to be excessive, and affirmed the judgment, as thus reduced; but the trial courts of this State have never been given power to reduce excessiveness of a verdict by a remittitur.

In Thero v. Missouri Pacific Railway Co. 144 Mo. App. 161, 129 S. W. 266, Judge Johnson, of the Kansas City Court of Appeals, said:

"Plaintiff should have been held to his minimum estimate of the value of the animals on the St. Louis market had there been no unusual delay. Instead, he based his remittitur on his maximum estimate of value."

In Kennedy v. Portman, 97 Mo. App. l. c. 257, Judge Goode, of the St. Louis Court of Appeals, said:

"The error in the instruction on the measure of damages was one which, in the state of the evidence, a remittitur could not cure. The judgment must be reversed and the cause remanded."

In Cook v. Globe Printing Co. 227 Mo. 471, 127 S. W. 332, Judge Gantt, speaking for the Supreme Court en Banc, at page 356, said:

"While the verdict is, in our opinion, too large, yet we cannot say that we believe that it is the result of either passion or prejudice, and therefore we are of the opinion that it is a case in which a remittitur may properly be required of the plaintiff, and if he accedes to it that the judgment should be affirmed for the amount of the verdict less the remittitur."

I feel that the remittitur, ordered by the trial court, could not be justified, even by an appellate court, under the evidence in this case, at least for not more than $100.00. If the jury believed plaintiff, it had the undoubted right to return a verdict for plaintiff and assess his damages at the sum of $1,000.00. Plaintiff had testified that his automobile was worth $1,500.00, before the collision, and only $500.00 or $600.00 afterwards. The jury may have felt that the incomplete repairs, testified to by the repair man, did not and could not make plaintiff's automobile as valuable as it was before the collision with defendant's automobile.

Under the circumstances, I certainly believe that the trial court erred in ordering a remittitur on the ground that such remittitur would tend to "mitigate" the other errors which the trial court believed had been made in the trial of the case.

I think the judgment should be reversed, with an instruction to the trial court to reinstate the verdict of the jury, and that the trial court be instructed to render judgment for the plaintiff, in accordance with such verdict. To the opinion of Judge McDowell, in affirming the action of the trial court, I feel compelled to dissent.