MARY R. GILLOGLY, Respondent, v. ROBT. J. DUNHAM and FORD F. HARVEY, Receivers of the METROPOLITAN STREET RAILWAY COMPANY, Appellants.

Kansas City Court of Appeals, March 1, 1915.

1. **NEGLIGENCE: Street Railways: Collision.** The plaintiff sued to recover damages for personal injuries sustained, while riding in a car operated by defendant. She was a passenger on a Troost car, when it was run into by another of the defendant's cars at the intersection of Troost avenue and Nineteenth streets. The plaintiff sustained severe injuries. *Held*, that the demurrer to the evidence was properly overruled.

2. ————: **Common Carriers: Care.** The defendants, as common carriers of passengers for hire, owed plaintiff the highest degree of care. They had no right to assume that only well persons would travel in their cars and it would constitute no excuse in law for them to say plaintiff would not have been injured if she had been well.

3. ————: ————: **Injury.** There can be no recovery for fright or terror caused by mere negligence of another, if such mental disturbance be unaccompanied by some physical injury, but there may be a recovery for fright and its injurious consequences where there is a concurrent physical injury.

4. **INSTRUCTIONS: Definitions: Passenger.** Where there is no dispute as to whether or not one was a passenger on defendant's cars, it is not necessary in an instruction to define the term passenger.

Appeal from Jackson Circuit Court.—*Hon. Jos. A. Guthrie,* Judge.

AFFIRMED.

*John H. Lucas* and *Chas. N. Sadler* for appellants.

(1) The demurrer interposed at the close of plaintiff's evidence and renewed at the close of all the evidence should have been sustained. Daniels v. Railroad, 177 Mo. App. 280; Scroggins v. Railroad, 120 Mo. 731; Rose v. Railroad, 113 Mo. App. 605. (2) The court erred in giving conflicting instructions. Arota v. Railroad, 150 S. W. 1122; Conway v. Railroad, 161 Mo. App. 501; Detrich v. Railroad, 143 Mo. App. 176. (3) The court erred in admitting incompetent, irrelevant and immaterial evidence offered by plaintiff. Hohn v. Cotton, 136 Mo. 216; Smith v. City of Sedalia, 152 Mo. 283; Ingles v. Railroad, 145 Mo. App. 241; Glasgow v. Railroad, 191 Mo. 358-366; Taylor v. Railroad, 185 Mo. 255. (4) The verdict is excessive. Picket v. Town of West Monroe, 63 N. Y. S. 30; Williams v. Railroad, 219 Mo. 126 and cases cited. (5) The court erred in refusing to sustain motion for new trial. Northrup v. Diggs, 115 Mo. App. 93; Morris v. Kansas City, 117 Mo. App. 303; Lehnick v. Railroad, 118 Mo. App. 611.

*Guthrie, Gamble & Street* for respondent.

(1) The court did not err in refusing to direct a verdict for the defendants. Hickey v. Welch, 91 Mo. App. 4. (2) The court did not err in omitting to define the word "passenger" in instruction number one, because there was no dispute that plaintiff was a passenger, and undisputed facts may properly be assumed as an instruction. Sotebier v. Transit Co., 203 Mo. 702; Cahill v. Railroad, 205 Mo. 393; Davidson v. Transit Co., 211 Mo. 320; Orcutt v. Century Bldg. Co. et al., 214 Mo. 35; Ellis v. Met. St. Ry. Co., 234 Mo. 657; Bank v. Investment Co., 160 Mo. App. 369. (3) The failure of defendant to request an instruction defining

the word "passenger" in instruction number 1, waives any right of complaint which otherwise it might have; because failure to define the word was not misdirection, but only nondirection, at most. Tethrow v. Railroad, 98 Mo. 74; Doyle v. Railroad, 113 Mo. 280; Mitchell v. Bradstreet Co., 116 Mo. 226; Warder v. Henry, 117 Mo. 530. (4) Instruction number 5, authorizing recovery for "her suffering, both physical and mental, if any, and her physical disability, if any, occasioned by her injuries, if any," did not broaden the issues and was sufficiently definite; especially when taken in connection with defendant's instruction number 10 as modified by the court (Rec. 252.) Waddell v. Railroad, 213 Mo. 8; Strayer v. Railroad, 170 Mo. App. 514; Lange v. Railroad, 208 Mo. 458, 478. (5) Instruction number 2, informing the jury that defendants "are responsible for all the ill effects shown by the evidence, if any, which naturally and necessarily follow the injuries, if any, in the condition of health in which plaintiff was at the time," etc., was not erroneous. Brown v. Railroad, 66 Mo. 588; Owens v. Railroad, 95 Mo. 182. (6) The objections to plaintiff's medical testimony are so vague and indefinite as to afford no foundation upon which to predicate error. O'Neill v. Kansas City, 178 Mo. 91; Holton v. Cochran, 208 Mo. 314, 424; Kinlen v. Met., 216 Mo. 145, 173; Carthage, etc. Stone Co. v. Cent. M. E. Church, 156 Mo. 671, 674; State v. Witherspoon, 231 Mo. 706, 720; Bragg v. Met., 192 Mo. 331, 341, 346.

JOHNSON, J.—The petition alleges that while plaintiff was a passenger in an electric street car operated by defendant receivers on the Troost avenue line of the street railway system in Kansas City, she was injured in a collision between that car and another which overtook it; that "as a direct result of said collision plaintiff's spine was severely wrenched and sprained; all the internal organs in her abdominal and pelvic region were severely shaken, torn and injured;

Gillogly v. Dunham.

she sustained a severe shock to her nervous system and her entire body, head and limbs were made sick, lame, sore and disabled'' and that plaintiff by reason of her injuries was damaged in the sum of $7500, for which she prays judgment.

The answer is a general denial. The jury returned a verdict for plaintiff in the sum of $750 and following the overruling of their motion for a new trial, defendants appealed.

The alleged injury occurred at 8:30 a. m., December 13, 1911, at the intersection of Troost avenue and Nineteenth street in Kansas City. The evidence shows beyond question that plaintiff, who was forty-nine years old, was a passenger on a northbound Troost avenue car operated by defendants as the receivers of the Metropolitan Street Railway Company and was seated in a transverse seat when the car stopped at the intersection of Nineteenth street to receive and discharge passengers. While stopped the car was run into by another which was following. The collision was not severe and no one complained of being injured to the conductor who, shortly after, took the names of the passengers. Some slight damage was done to the fenders at the place of contact but there was no other damage to either car. Plaintiff claims that the impact was of sufficient violence to cause the car in which she was riding to jump forward and to jerk her against the back of the seat. She speaks of the jerk as ''not so terribly violent, but it was hard enough to give me that sudden jerk or jar . . . it threw my head back . . . I jerked in such a way that a quivery nervous sensation ran all through me. I didn't know hardly what had happened.'' The car proceeded and plaintiff left it at Twelfth street and boarded another going east on that street. On alighting from the Troost avenue car she stopped to observe and make a note of its number. The conductor of the Twelfth street car assisted her to the steps. She states: ''When I

went to get up I found that I couldn't get up the steps.
I went from there to Twelfth and Benton and I got off
there. I was helped again and then I walked to 918
Benton (about three blocks) to a lady I was sewing
for. . . . I just collapsed down on the sofa without
taking off my wraps. I felt dazed and my back was
hurting me." She worked some that day but in the
afternoon went alone on the street cars to the office
of her physician. There were no marks of injury on
her body and the principal injury she claims she re-
ceived was a nervous shock produced, in part, by being
suddenly jerked backward against the back of the seat,
but mainly by her excessive fright caused by the collis-
ion. The inference from plaintiff's own evidence is
that her nervous system for years had been in a dis-
eased condition and that she had a morbid and uncon-
trollable fear of impending danger, especially while
riding in street cars. In 1902, she was injured in a
collision of street cars in Kansas City operated by de-
fendant company. She sued to recover damages alleg-
ing in her petition that her "left shoulder, left foot
and spine were wrenched, sprained and bruised," and
that her *peritoneum* and *uterus* were injured. The case
was settled without trial by defendant paying her
$1400 in full discharge of her demand. Before this
injury plaintiff had been a nervous woman and had
been treated by her physician for disorders chiefly
of the reproductive organs, and the injury had left her
in a state of chronic nervousness. Her physician, to
whom she went on the afternoon of the day of the sec-
ond injury, stated that when he first examined her fif-
teen years before, she had "a neuropathic tendency
. . . was a neurotic . . . had pains in her head
and back and in front . . . had a ptosis of the ab-
dominal organs, a dislocation of the abdominal organs
. . . the stomach had adhesions and in all these
different organs so when she would bend her body
either laterally or backwards, it would pull on these

adhesions and give her pain, and she had what she has described to me so often, peritonitis, but it was rather the pulling of these organs that caused the pain . . . I have been in touch with Mrs. Gillogly off and on, you might say, since I have known her. She is the most chronic patient I think I ever had.''

Plaintiff had been able to pursue her vocation of dressmaker but had been in the diseased state above described. Added to this, she was at the period of menopause which increased her nervousness and predisposition to unnatural fright and terror. She complained to her physician and at the trial that the injury in question wrenched her back and hurt her head and one of her elbows. Of the result of his examination of her, the physician testified: "The principal part of the injuries seemed to be the spinal—not the spinal cord, but the spinal column. It is a very different proposition. The bones of the spine—I ran my hand up and down the spinal column and elicited a great deal of tenderness. Now the only way I know that is what she claimed, that it hurt her intensely. . . . The manifestations of pain are subjective. She would push me away when I would barely touch the parts. Now, that was a generally distributed tenderness all up and down the spine, from the base of the skull clear down to the end of the spinal column. It was marked extreme pain. Now when I went to take an examination of the pelvic organs I found that that was absolutely and positively impossible . . . on account of the tenderness, and the pain that was elicited in the attempt, so I didn't make any examination of the pelvic region."

Shortly after the injury plaintiff who had had cause to think she had passed beyond the great climacteric was attacked by periodical hemorrhages of the reproductive organs which continued to the time of the trial. Other physicians than the one from whose testimony we have quoted examined and treated plain-

tiff and the gist of their expert testimony is to the effect, and leads to a reasonable inference, that plaintiff, though neurotic and permanently injured in her spine by the former collision, received a serious and highly injurious nervous shock in the second one and also an additional traumatic injury to her spine.

The evidence of defendants concedes that there was a collision but describes it as being so mild that it could not have caused an injury to any passenger and it is contended by defendants that their demurrer to the evidence should have been sustained on the ground of "the physical impossibility for plaintiff to have received any injuries in a collision" such as that described in the evidence, and the rule is invoked that testimony which is repugnant to plain physical fact and law should be treated as possessing no probative strength. [Daniels v. Railway, 177 Mo. App. 280; Scroggins v. Railway, 138 Mo. App. 215; Rose v. Railroad, 113 Mo. App. 605.]

The witnesses do not agree entirely upon the subject of the nature of the collision. Those for plaintiff describe it as being violent enough to rudely jostle and shake passengers. We must accept as true the reasonable statements of plaintiff and her witnesses and doing so, find nothing unreasonable in her assertion that the car in which she was riding was jolted hard enough to jerk her body backward into violent contact with the back of the seat. It may be conceded that if she had been a healthy and sound person she would not have been injured by the collision, but she was in ill health and had been injured before in her spine. Defendants, as common carriers of passengers for hire, owed her the highest degree of care. They had no right to assume that only well persons would travel in their cars and it would constitute no excuse in law for them to say that plaintiff would not have been injured if she had been well. Prima facie they were negligent in allowing the cars to collide and they

do not attempt to show that the collision was due to unavoidable causes. Plaintiff was entitled to go to the jury if her evidence tends to show that the collision was the direct cause of physical injury to her, and we think her evidence relating to this issue is substantial and reasonable. It shows, in substance, that she sustained a fresh injury to the spine which probably she would have escaped if her spine had not been injured before and that this injury, co-operating with her abnormal nervous fright, produced a nervous shock and impairment of lasting consequences.

The rule in this State is that there can be no recovery for fright or terror caused by mere negligence of another if such mental explosion be unaccompanied by some physical injury, nor for such physical injuries as may be caused solely by such mental disturbance where there is no injury to the person from without (Crutcher v. Railroad, 13 Mo. App. 311, and cases cited), but there may be a recovery for fright and its injurious consequences where there is a concurrent physical injury whether such mental disturbance came through the battery or along with it. The rule that no recovery may be had for fright, terror, or alarm caused by the negligence of another has been well spoken of as an arbitrary exception to a general rule based upon a notion of what is practicable and should not obtain in cases where physical injuries and nervous shock concurrently result from the same battery. Where the reality of the cause is guaranteed by proof of a substantial battery of the person, there is no occasion to press further the exception. [Homans v. Railway, 180 Mass. 456, 62 N. E. 737; Heiberger v. Telephone Co., 133 Mo. App. 462.] In the case last cited we held that recovery should be allowed for nervous shock produced by terror of a person rescued from drowning whose physical injuries were not of a nature to have contributed to the mental derangement.

In the present case the injury to the spine is a guaranty of a substantial battery of the person which, of itself, if negligently caused, will support a recovery for nervous shock produced entirely by the concurrent fright. The demurrer to the evidence was properly overruled.

Objection is offered to plaintiff's instruction numbered one, on the ground that it submitted to the jury the question of whether or not plaintiff was a passenger on the car without defining the word "passenger."

All the evidence shows that plaintiff was a passenger, defendants did not dispute that fact, and the instruction would not have been erroneous had it treated it as proved. The rule has often been stated that "the trial court may, in its instructions to the jury, assume the truth of a proposition which is established by the undisputed evidence in the case." [Sotebier v. Transit Co., 203 Mo. l. c. 714, and cases cited.]

The second instruction told the jury "that if defendants were guilty of negligence as defined in other instructions, then they are responsible for all the ill effects shown in the evidence, if any, which naturally and necessarily followed the injuries, if any, in the condition of health in which plaintiff was at the time and that it is no defense that the injuries, if any, may have been aggravated and rendered more difficult to cure by reason of plaintiff's previous state of health, or that by reason of latent ailments the injuries, if any, were rendered more serious to her than they would have been to a person in robust health; and that it is no defense to say that such injuries would not have occurred, or would not have been so great, had the passenger been in good health."

This was a proper and necessary definition of the injuries which, if caused by the pleaded negligence, should be compensated in damages.

Instruction numbered sixteen, asked by defendant was properly refused. Plaintiff could have been jerked back violently without the car in which she was riding being moved forward an appreciable distance.

Objections to rulings on evidence and the point of an excessive verdict are too devoid of merit to be discussed. There is no prejudicial error in the record. There is much in the evidence to indicate that plaintiff's case is not meritorious, but her evidence is substantial and we would invade the province of the triers of fact if we should weigh conflicting evidence or pass on the issues of plaintiff's credibility and motives. The judgment is affirmed.

All concur.