J. W. BELISLE, Administrator of the Estate of Gertie Belisle, Deceased, and J. W. Belisle, Respondents,

v.

Dr. Loys C. WILSON, doing business as Presnell Hospital, Appellant.

No. 46265.

Supreme Court of Missouri,

Division No. 2.

April 14, 1958.

Rehearing Denied May 12, 1958.

Robert H. Jones, Kennett, Jones & Jones, Kennett, for appellant.

McHaney & McHaney, Kennett, for respondents.

STOCKARD, Commissioner.

Gertie Belisle and her husband, J. W. Belisle, filed suit against Dr. Loys C. Wilson, doing business as the Presnell Hospital and obtained judgment totaling $8,000. By the petition, which was in one count, Mrs. Belisle sought damages for personal injuries received when she fell out of a bed in the hospital where she was a patient, and J. W. Belisle sought damages for medical expenses and loss of services of his wife.

No objection was made to the form of the petition.

Dr. Wilson is the sole owner of the Presnell Hospital located at Kennett, Missouri, which is a private hospital operated for profit. On March 24, 1956, Gertie Belisle, then 60 years old, was admitted to the hospital as a patient of Dr. James Fuzzell. She was not then and had never been a patient of Dr. Wilson. The tentative diagnosis of Dr. Fuzzell was osteoarthritis of the left hip with the possibility of cancer. There were no orders for any special nursing care.

Mrs. Belisle walked into the hospital and to the room assigned to her which was located on the second floor of the building. She also walked from her room to the elevator, and after being taken to the basement, walked to the therapy room. She returned to her room in the same manner. The bathroom was located across the hall from her room, and she got up from her bed and walked to and from the bathroom whenever necessary.

On Sunday evening, March 25, pursuant to her doctor's orders Mrs. Belisle was given a laxative and a "sleeping capsule" by the nurse's aid then on duty. Mrs. Belisle testified that the laxative consisted of "cascara and milk of magnesia," but the person who administered it stated that it was a "dose" of "milk of magnesia."

Mrs. Belisle was the only occupant of a "semi-private room." Although this was the principal disputed factual issue, there was substantial evidence from which the jury could find that there was no "call button" with which Mrs. Belisle could summon the nurse or other person whose duty it was to tend to her needs as a patient. The room was equipped for such a device, and there was a receptacle located in the wall near the bed, but Mrs. Belisle and the witnesses for plaintiffs testified that there was no "signal cord" plugged into this receptacle. Defendant's evidence was to the effect that the call button was properly inserted in the receptacle at all times. The room was also equipped with a ceiling light which was operated by a switch located near the door and which could not be reached by Mrs. Belisle from her bed. There was also a floor lamp located near the head of the bed, but she testified unequivocally that she could not reach this lamp. A nurse's aid testified that on Sunday night she adjusted this lamp for Mrs. Belisle to use in reading, and that she moved it next to the bed so that Mrs. Belisle could turn it on or off.

Mrs. Belisle awakened about three or three-thirty o'clock Monday morning. The room was then "dark" and, in her words, "I woke up in the morning, and felt like my kidneys wanted to act, and I seen that I had had a bowel movement, and I started to get up and fell out of bed." She further testified that when she fell she "was trying to get up," and that "well, I just started to get up and I missed that stool" that was at the side of the bed. As the result of the fall Mrs. Belisle sustained a fractured hip. Two attendants of the hospital were in the hall "at the desk." They heard the sound of Mrs. Belisle falling and went immediately to her aid.

Appellant's first point is that "The court erred in overruling Defendant's Motions for a directed verdict offered at the close of plaintiff's evidence and renewed at the close of all the evidence offered in the case." This point does not set forth "why it is contended the court was wrong," and does not comply with Supreme Court Rule 1.08(d), 42 V.A.M.S. Gurley v. St. Louis Public Service Co., Mo.Sup., 256 S.W.2d 755 [1]; Lomax v. Sawtell, Mo.App., 286 S.W.2d 40 [5]; State ex rel. P. W. Finger Roofing Company v. Koch, Mo.App., 272 S.W.2d 22 [1]. However, in view of our discussion of the next point in appellant's brief, particularly in reference to the alleged charge of negligence pertaining to the failure of defendant to furnish a call button, we deem it advisable to examine and rule on the one and only issue presented in the argument portion of the brief in support of this first point.

■ Appellant argues that by reason of the testimony of Mrs. Belisle pertaining to the circumstances under which she fell out of her bed, the substance of which we have previously quoted, "she testified herself and her husband out of court and conclusively established that she had no case," and that "she has testified herself that the cause of her injury was an accident, and in no wise caused by any negligence on the part of the appellant." Appellant relies on the statement in Burris v. Kansas City Public Service Company, Mo.App., 226 S.W.2d 743, which was quoted with approval in Smith v. Siercks, Mo.Sup., 277 S.W.2d 521, 525, to the effect that if a party in full possession of his faculties testifies unequivocally and understandingly to a material fact peculiarly within his own personal knowledge, which negatives his right of action or defense, he is precluded from relying upon any testimony to the contrary, unless he gives some reasonable explanation of his previous statement as having been the result of mistake, oversight, lapse of memory or misunderstanding. Under the facts of this case, this rule is not applicable. It is true that, standing alone, the testimony of Mrs. Belisle did not disclose facts showing a right to recover or to maintain her cause of action, but that testimony did not negative her right of action based on the charge of negligence that the defendant failed to furnish her a call button to use in summoning aid and to which, as we shall subsequently see, appellant makes no objection.

■ Appellant's next point is as follows: "The Court erred in giving Instruction No. 1–P; erred in refusing Defendant's Instruction No. 11–D; erred in refusing Defendant's requested Instruction No. 14–D; and the Court erred in refusing Defendant's Instruction No. 16–D; the Court erred in refusing Defendant's requested Instruction No. 15–D; the Court erred in refusing Instruction 13–D." Following this are three subparagraphs, each of which pertains solely to instruction 1–P. No cases are cited except in support of the three subparagraphs and the argument portion of the brief under this point pertains only to instruction 1–P. This point presents nothing for review as to any instruction except instruction 1–P, and that only by reason of the subparagraphs which we shall next consider. Evinger v. Thompson, 364 Mo. 658, 265 S.W.2d 726 [21]; State ex rel. State Highway Commission v. Schade, Mo.App., 271 S.W.2d 196 [7]; Palmer v. Security Ins. Co. of New Haven, Conn., Mo.App., 263 S.W.2d 210 [8].

■ By instruction 1–P the jury was told that if it found that Mrs. Belisle was a patient at the Presnell Hospital and (1) was "so sick and afflicted by reason of disease and medicines to be physically incapable of caring for herself," and that the defendant's employees at the hospital had knowledge of her condition, or in the exercise of ordinary care, should have had such knowledge, and "failed to watch and care for her," *and* (2) in the exercise of ordinary care for the safety of Mrs. Belisle, the defendant "failed to provide a call button in the room occupied by the plaintiff, Gertie Belisle, whereby she could call for aid and assistance in getting off the hospital bed where she was located," *and* (3) that the defendant "negligently permitted the lights in the said Gertie Belisle's room to be turned off without informing her how and where the lights could be turned on in the event of need," and if the jury found that "all of the above acts were negligent and that as a direct and proximate result thereof" Mrs. Belisle was permitted to and did fall from her hospital bed and was injured, then in such event, the verdict shall be for Mrs. Belisle and against the defendant. By the above inserted numbers we have divided the instruction into what we consider to be the three conjunctively submitted charges of negligence.

Appellant contends that there was no evidence to support the submission that Mrs. Belisle was so afflicted by reason of disease and medicine that she was physically incapable of caring for herself, and he also contends that by the phrase "failed to watch and care for her" the instruction

submitted both general and specific negligence. We should first note that respondent has taken the substance of this first charge of negligence from Davis v. Springfield Hospital, Mo.App., 196 S.W. 104. That case pertained to the duty of a hospital to a patient, who was in a delirious condition, to prevent him from injuring himself. However, the evidence here affirmatively established that there was nothing wrong with the mental condition of Mrs. Belisle, and the mere fact that the substance or theory of the submission was appropriate in the Davis case does not necessarily make it proper in this case.

Appellant attempts to isolate the phrase, "and failed to watch and care for her," as a separate conjunctive submission of general negligence, but it was in fact an integral part of the first conjunctive submission, and was predicated upon the contention that Mrs. Belisle was physically unable to care for herself. For that reason the use of the phrase is not subject to the precise criticism registered against it. However, the statement of facts of this case unquestionably demonstrates that this first conjunctive submission of negligence was not supported by the evidence. There was no evidence to support a finding that because of disease or medicine Mrs. Belisle was not physically able to care for herself. She testified that at all times while in the hospital prior to her fall she was able to walk and to get in and out of bed without help. She had received no medicine except a laxative, not shown to be excessive in amount, and a sleeping capsule. The latter was described as a "seconal," which apparently referred to a "seconal sodium" defined to be "a short acting sedative." Dorland's Medical Dictionary, 23d Ed. She described no effect from the sleeping capsule except that when she awakened she was "drowsy."

Appellant also contends that the fact, if the jury found it to be true, that the appellant, through his employees, "permitted the lights in said Gertie Belisle's room to be turned off without informing her how and where the lights could be turned on in the event of need" was not a proximate or concurring cause of her injuries. There was evidence that Mrs. Belisle was not told how and where to turn on the lights, but as previously mentioned, Mrs. Belisle suffered the injuries when she fell trying to get out of bed, and she testified unequivocally that from her bed she could not reach the switch by the door controlling the ceiling light and that she could not reach the floor lamp. It is true that appellant's evidence was to the effect that the floor lamp was within her reach from the bed, but even if this would be material to show proximate cause, in view of plaintiff's personal testimony, she cannot rely on this. Meese v. Thompson, 344 Mo. 777, 129 S.W.2d 847 [1]; Elkin v. St. Louis Public Service Company, 335 Mo. 951, 74 S.W.2d 600 [8]; Dilallo v. Lynch, 340 Mo. 82, 101 S.W.2d 7 [3]; Blue v. Supreme Camp of American Woodmen, Mo.App., 135 S.W.2d 373 [10]. There is no evidence from which even an inference can be drawn that the failure on the part of appellant to tell Mrs. Belisle *where* or *how* to turn on the lights in the room had anything whatever to do with the cause of her falling.

The result of the above conclusions is that the main verdict directing instruction of Mrs. Belisle purports to submit conjunctively three separate charges of negligence, two of which are not supported by evidence. The only comment we need make concerning the other submission of negligence in the instruction, which pertains to the failure to provide a "call button," is that appellant does not challenge it either on the ground that it is not supported by the evidence, as he did the submission pertaining to the physical condition of Mrs. Belisle, or because it does not submit negligent acts which were the proximate cause of the injuries, as he challenged this submission pertaining to the lights. For an interesting case because of the similarity of some of the features, including whether the failure by a hospital to provide a "call button" to a patient constituted want

of due care, see Ford v. Vanderbilt University, Tenn.App., 289 S.W.2d 210.

■ It has frequently been held that where the grounds of negligence are stated conjunctively in an instruction, and any one of such grounds is sufficient to authorize the verdict, the instruction is not to be held prejudicially erroneous because some one of the other grounds lacks supporting evidence to warrant its inclusion. The reason given for this rule is that "When the jury, in such a situation, purports to find for the plaintiff upon all the grounds hypothesized, it necessarily finds for him upon the ground which has support in the evidence; and its purported finding upon the unsupported ground is therefore harmless to the defendant." See Beahan v. St. Louis Public Service Company, 361 Mo. 807, 237 S.W.2d 105, 107, and the cases there cited. However, what we consider to be the most desirable rule is stated in Glowacki v. Holste, Mo.Sup., 295 S.W.2d 135, 140, where it is said that "the fact alone that there is a conjunctive submission is not a 'cure-all' which necessarily and automatically makes harmless an erroneous portion of an instruction. On the contrary each instruction must be examined to determine whether, after the application of the 'rule of conjunctive submission,' a given instruction is, despite conjunctive submission, prejudicially erroneous."

Unlike the situations in the Beahan and Glowacki cases, the jury was not improperly told by instruction 1–P that any of the facts hypothesized, if found to exist, constituted negligence. Instead the jury was required first to find the existence of the facts, and then that the existence of "all the above acts were negligent and that as a direct and proximate result thereof" Mrs. Belisle was injured. It can fairly be said in this case that the jury found in favor of Mrs. Belisle in spite of the unnecessary and improper assumption by her of burdens not required or justified by the evidence. This instruction is of the type which, pursuant to the general rule referred to above, has been held not to be prejudicially erroneous, and in the absence of any showing by appellant how the instruction was prejudicial to him despite the conjunctive submission, we see no reason to hold that the above general rule pertaining to conjunctive submissions should not apply.

Although not referred to by respondents, we deem it advisable to mention that by instruction 7–D, given by the court at the request of appellant, the jury was told that "there has been submitted to you in other instructions given in this cause certain acts of negligence on the part of the defendant * * * and unless you shall find and believe from the evidence in this cause * * * that the defendant, his agents and employees, were guilty of some one or more acts of negligence on the part of the defendant as heretofore submitted to you in other instructions of the Court, * * * then you are instructed that your verdict and finding in this cause shall be in favor of the defendant * * *." Whatever the effect of this instruction would be for other purposes, we believe that appellant is now in no position to complain on this appeal that two of the charges of negligence in plaintiff's instruction 1–P were not supported by evidence when he makes no such challenge to the third charge of negligence contained therein.

■ The substance of appellant's next contention is that the trial court erred in giving instruction 2–P, a measure of damages instruction, because it authorized recovery by Mrs. Belisle for loss of earnings.

Prior to her admission to the hospital, Mrs. Belisle had been regularly employed in a shirt factory where she earned $40 a week. There can be no question but that the evidence establishes that when she fell out of bed and her hip was fractured, that incident, at least for some substantial period, totally incapacitated her, and that as a result of the fracture she sustained a permanent partial disability. Under these circumstances, standing alone, it has been

held that there is a presumption, or possibly it would be more accurate to call it an inference, that but for the injuries she would continue to earn the amount she was earning immediately prior to the injury. See Wilson v. Kansas City Public Service Company, 354 Mo. 1032, 193 S.W. 2d 5 [4]. But, appellant contends that this presumption or inference is not applicable in this case because he introduced evidence that even if the fall had not occurred Mrs. Belisle could not have returned to work.

Several years prior to her admission to the hospital, Mrs. Belisle had undergone surgery for cancer. After she fell from bed she was taken to a clinic in Memphis, Tennessee, where it was determined that in addition to the fracture, she had an advanced cancerous condition of the femur of her hip. The surgeon "opened up the hip joint" and took "out the head and neck and put in a metal substitute." Dr. Waring testified that in his opinion Mrs. Belisle's disability by reason of the fractured hip was permanent. He also stated that if the fall had not occurred, it was his opinion that Mrs. Belisle's hip would have within a year "entirely disintegrated" from the cancer. Apparently this assumed that no treatment would have been given. When asked if he could state with a reasonable degree of certainty what would have been her disability if she had not sustained the fracture of her hip, the doctor replied, "I can't tell you what disability she would have had, *if any*." (Emphasis added.) However, he also stated that because of her cancer "eventually she would have had to have something done on her hip," and he thought that "eventually she will die from her cancer." Dr. Fuzzell, testifying as appellant's witness, stated that in his opinion, based on his diagnosis and the clinical findings made subsequent to her fall, even if Mrs. Belisle had not fallen out of bed and fractured her hip, she "would not have been able to work further."

Of course, a plaintiff may not recover damages for a loss not shown to be a proximate consequence of defendant's negligence, Rogers v. Thompson, 364 Mo. 605, 265 S.W.2d 282, and the jury is not entitled to assume that a plaintiff sustained a loss of earnings. There must be proof that there was such a loss before the issue may be submitted to the jury, Chilcutt v. Le Clair, Mo.App., 119 S.W.2d 1 [2], and the burden to present that proof is on the plaintiff. Henry v. Tinsley, 240 Mo.App. 163, 218 S.W.2d 771 [6]. In this case the evidence clearly established that Mrs. Belisle had worked regularly right up to the last working day before she suffered the injuries from the fall and that as a direct and proximate result of those injuries she was immediately and totally disabled; that the injuries suffered from the fracture would have resulted in a permanent partial disability notwithstanding the cancerous condition; and that she had not been able to return to work. Generally speaking, the incurring by a plaintiff of a permanent injury as the direct result of defendant's negligence is sufficient to recover for the loss of future earnings. McGarvey v. City of St. Louis, 358 Mo. 940, 218 S.W.2d 542 [5]. But, of course a person suffering from a prior impaired condition may not recover for a result not a natural and direct, or proximate, result of the negligence of the defendant. Quigley v. St. Louis Public Service Co., Mo.Sup., 201 S.W.2d 169 [12]; Widener v. St. Louis Public Service Company, 360 Mo. 761, 230 S.W.2d 698 [4].

Absent the evidence of the cancerous condition, Mrs. Belisle would have been entitled to the instructions advising the jury that in determining her damages it could consider her past and future loss of earnings. The effect of the testimony of Dr. Fuzzell and Dr. Waring was that she had the cancerous condition of the hip prior to sustaining the fracture, and that in the opinion of Dr. Fuzzell she could not have returned to work because of the

cancer, but that in the opinion of Dr. Waring, absent the fracture, she would "eventually" have had to have something done about her hip because of the cancer, but he did not know what the resulting disability would have been, if any, although he thought she would eventually die from the cancer. Under this evidence it was for the jury to determine the factual question of what proportion of the loss of earnings of Mrs. Belisle was attributable to negligence of the appellant, and what proportion was attributable to the cancer alone; in other words, the jury was to apportion the damages to the respective causes. See Thompson v. Healzer Cartage Company, Mo.Sup., 287 S.W.2d 791 [8]. We note in this connection that appellant requested and obtained an instruction by which the jury was told that Mrs. Belisle was entitled to recover from appellant "only such damages as you shall find and believe from the evidence was caused and occasioned by the negligence" of appellant, and that the jury "cannot and should not" allow to Mrs. Belisle any damages which it found and believed from the evidence was caused and occasioned by other causes and not as the result of any alleged negligence of the defendant. The giving of instruction 2–P did not result in reversible error.

Appellant also contends that instructions 2–P, 3–P and 4–P, when considered together, were misleading and confusing in that they authorized the jury to assess double damages for loss of earnings of Mrs. Belisle. Instruction 2–P was the measure of damages instruction on behalf of Mrs. Belisle, and as previously noted it authorized recovery by her for loss of earnings. 3–P was the verdict directing instruction and 4–P was the measure of damages instruction on behalf of J. W. Belisle. Appellant bases his contention on the language in instruction 3–P which authorized a finding in favor of J. W. Belisle if the jury found that Mrs. Belisle was rendered unable "to perform her usual work and duties," and that J. W. Belisle

had been and in the future would be "deprived of the services, society, association and companionship of his said wife."

Appellant cites Nelson v. Metropolitan Street Railway Company, 113 Mo.App. 659, 88 S.W. 781, which pertained to a husband's separate suit for loss of services of his wife, and in which it was held that the wife, and not the husband, was entitled to recover for her loss of earnings. Appellant then cites four cases pertaining to condemnation proceedings, which hold that the instructions in such cases should not authorize an award of double damages for the taking by eminent domain, and six cases which hold as a general proposition that the instructions should not be inconsistent or confusing. No case is cited which holds that the language used in the instructions in this case permits the recovery of double damages or is confusing.

Instruction 2–P is in the ususal form of a measure of damages instruction in a suit for personal injuries, and instructions 3–P and 4–P are in the usual form of instructions given in a suit by a husband for the loss of services of his wife. There is no positive misdirection, and we do not see how any reasonably intelligent jury could have concluded that it was authorized to award damages to J. W. Belisle for the loss of earnings of Mrs. Belisle. We note that the separate claims of Mr. and Mrs. Belisle were intermingled in one count, and as far as the transcript shows this was done with the consent of appellant. If it may be contended that by reason of this the instructions tended to be confusing, appellant is now in no position to complain. We also note that no clarifying instruction was requested.

Appellant also objects to instruction 5–P on the ground that it is what is known as an "aggravation" instruction when respondents did not plead that the cancerous condition existed prior to the fall from bed. However, respondents did not base their claims on the contention that the fall from bed aggravated a previously ex-

isting cancerous condition. The claims were based on the fact that she fell and fractured her hip as the result of appellant's negligence, and the instruction was to the effect that the existence of the cancerous condition did not constitute a defense. For instructions similar to that used in this case, see Smart v. Kansas City, 208 Mo. 162, 105 S.W. 709, 14 L.R.A.,N.S., 565, and Gillogly v. Dunham, 187 Mo.App. 551, 174 S.W. 118. There was no error in giving this instruction.

Appellant's last point is that the trial court erred in striking from instruction 8–D "that portion which told the jury that the burden of proof to establish the amount of damages sustained by plaintiffs was upon the plaintiffs." This instruction, as given, was to the effect that if the jury found that either plaintiff suffered damages from causes other than appellant's negligence then it should allow to plaintiffs only such damages as it shall find was caused by the alleged negligence of appellant. The court struck out a provision at the end of the instruction that "the burden of proving the damages sustained * * * is upon the plaintiffs to establish such damage by the preponderance of the evidence in this cause." Bell v. S. S. Kresge Co., Mo.App., 129 S.W.2d 932, the only case cited by appellant, held that it was reversible error to refuse a proper burden of proof instruction on the issue of proving liability when there was no other instruction on that subject. However, we note that by instruction 7–D, a burden of proof instruction requested by appellant, the jury was told "that the plaintiffs must prove some one or more of the acts of alleged negligence on the part of defendant * * * by the greater weight or preponderance of the evidence, together with the damages suffered by plaintiffs." Assuming that appellant would be entitled to have the jury instructed as requested by instruction 8–D in the absence of the quoted provision in instruction 7–D, the trial court did not have to give two instructions on the same subject. While instruction 7–D may not have been as well worded as instruction 8–D, it did purport to cover the subject matter of that part of 8–D which was striken out, and the trial court is not required to select the better worded of two instructions. No prejudicial error resulted from the complained of action of the trial court.

We find no prejudicial error in the matters complained of by appellant on this appeal. Therefore, the judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

STORCKMAN, P. J., EAGER, J., and HUNTER, Special Judge, concur.

LEEDY, J., not sitting.