**Wesley C. JOHNSON, Jr. (Plaintiff), Appellant,**

v.

**Paul WESTON, III (Defendant), Respondent.**

No. 30238.

St. Louis Court of Appeals.

Missouri.

Dec. 15, 1959.

Rehearing Denied Jan. 12, 1960.

F. X. Cleary, C. M. Kirkham, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, St. Louis, for appellant.

Michael B. Gershenson, St. Louis, for respondent.

WOLFE, Presiding Judge.

This is an action for damages occasioned by an automobile collision. The defendant filed a counterclaim. The plaintiff dismissed his petition, and the trial was on the counterclaim. There was a verdict and judgment for the defendant, and the plaintiff prosecutes this appeal.

Weston, the defendant counterclaimant and respondent here, testified that he was thirty years of age, married, and a machinist by trade. On November 4, 1954, the date of the collision, he was driving his 1950 Plymouth. With him at the time was a young woman who was asleep on the front seat with her head in his lap. Many pages of the transcript are devoted to testimony about Weston's relation with the woman who was with him. He told at length of an affair that he had with her,

which he was seeking to terminate on the night of November 3. He had been with her intermittently throughout the night, attempting to get her to leave a tavern. She wanted to take a ride before going home, and they were traveling westwardly on Highway 40.

It was drizzling rain, visibility was poor, and the pavement was slightly wet. Highway 40 at the point where the collision occurred is a dual highway. Each slab is 24 feet in width, and they are divided by a parkway about 50 feet wide. Weston's car reached a crossover which permitted westbound traffic to cross the parkway to the eastbound portion of the highway.

This crossover was in front of a filling station which was located on the south side of the eastbound slab. The filling station was lighted and had a broad graveled entrance from the eastbound highway. Weston wanted to get gas and head back eastwardly toward his home, so he turned into the crossover. He stopped just short of the eastbound road. He said he looked to his right, or west, before driving onto the highway to see if there were any cars coming, and that he saw nothing. He then put his car into first gear and moved onto the pavement. He said that he was traveling at a speed of 5 to 8 miles per hour, and had traveled possibly 5 or 10 feet when he saw a flash of lights. He said that he saw the headlights of Johnson's car the instant before the impact, and that he knew nothing of what happened thereafter. He said that it was at the instant of impact, or a split second before the collision, that he saw the headlights. He did nothing to avert the collision because he did not see anything until the lights appeared. He also testified that he could see about 300 feet to the right under the conditions present at the time.

Johnson's testimony was to the effect that he was in the Armed Services at the time of the collision. He was on furlough and was returning from a visit to Columbia, Missouri, to his home in St. Louis County.

He was driving a Mercury automobile belonging to his father. There were two passengers in the car with him who were also Service men and who were staying at Johnson's home. He was traveling eastwardly in the right-hand lane at a speed of 50 or 60 miles per hour as he approached the point where the collision took place. He was 75 to 100 feet away from Weston's automobile, and traveling in the middle of the outside lane or next to the center line of the two eastbound lanes, when he first saw it. At that time Weston's automobile was just starting onto the highway. As soon as he saw the car he applied his brakes and turned his car to the left. His car swerved to the left but struck Weston. He did not know exactly where the collision took place in relation to the center of the highway. He stated that he may have swerved to the center line, or left of it, two or three feet. After the collision his car was in the parkway that divided the highway. Pictures of the two cars introduced in evidence showed that Weston's car had been struck in the center of the right side by the front of Johnson's car.

An expert witness testified in answer to a hypothetical question that using a reaction time of three-quarters of a second, Johnson could have swerved his car one or two feet to the right and avoided the collision. He was cross-examined as to testimony he had given at a former trial, at which time he had said that it was possible that reaction time might be as much as one and a half seconds, but he stated that this estimate of time was not given as a fact but as a possibility.

The matter was submitted to the jury upon humanitarian negligence in failing to swerve to the right and failure to sound a warning.

■ It is contended that the court erred in overruling appellant's motion for a directed verdict at the close of all of the evidence. Axiomatic as it may be, the argument of appellant prompts us to restate the rule that when we are confronted with

the question of whether or not the evidence is sufficient to make a case for the jury, we must consider the evidence in a light most favorable to the party asserting the cause of action. De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628. When his evidence is not entirely unreasonable or opposed to physical laws, we must give him the benefit of all favorable inferences and reject unfavorable inferences. Thus weighing the evidence, the cause may not be withdrawn from the jury unless the facts and the reasonable inferences to be drawn therefrom are so strongly against him as to leave no room for reasonable minds to differ. De Lay v. Ward, supra; O'Shea v. Pattison-McGrath Dental Supplies, 352 Mo. 855, 180 S.W.2d 19; Bronson v. Kansas City, Mo. App., 323 S.W.2d 526.

In support of his point the appellant states, first, that there was insufficient evidence of probative value that the accident could have been avoided by swerving to the right. We are cited to East v. McMenamy, Mo.Sup., 266 S.W.2d 728. The only similarity between it and the case under consideration is that in both cases the expert witness was the same person. In the East case the court held that the expert evidence was contrary to the physical facts. In Breshears v. Myers, Mo.Sup., 266 S.W.2d 638, also cited, the court held that it was not error to refuse a humanitarian instruction on failure to stop when there was no evidence of the stopping distance. Paydon v. Globus, Mo.Sup., 262 S.W.2d 601, and Perry v. Dever, Mo.Sup., 303 S.W.2d 1, additional citations, are in no way similar to the facts in the case before us.

The record before us presents a simple situation. The preponderance of the evidence is that respondent's car was struck in the left-hand side of the two eastbound lanes. The respondent testified that he had traveled not more than 5 or 10 feet, at a speed of 5 to 8 miles per hour, when he saw a flash of light, and the next instant he was struck. He said that he had had no time to do anything. An instant is a portion of time too short to be estimated, according to Merriam Webster's Second Edition of the Dictionary. This evidence, which the jury was entitled to believe, would put the respondent's car in the left-hand eastbound lane as that lane was 12 feet wide.

■ Appellant's evidence was that he may have swerved two or three feet to the left, and this could also place the collision in the left hand of the lane. It is therefore simple to demonstrate that if the appellant swerved to the left and struck the respondent in the left-hand lane, he could have swerved to the right and avoided striking the respondent. There was creditable testimony that he could have done so, and we must hold that the evidence was sufficient to support the theory that the accident could have been avoided by swerving to the right.

The appellant also contends that there was no evidence of probative value that a warning would have been effective, citing Vietmeier v. Voss, Mo.Sup., 246 S.W.2d 785. That case clearly pointed out that a humanitarian case predicated upon a negligent failure to warn differs from a case where failure to stop is the negligence relied upon. The reason for this is the additional time element involved. Stopping depends only upon the reaction of the person charged with the negligence, while in the case where a failure to warn is charged, there must not only be evidence of sufficient time for the sounding of the warning but time thereafter for the party warned to heed the warning, to react thereto, and to escape injury.

■ The most favorable view that we may take of the evidence is that appellant had 100 feet in which to effectively act while traveling at a speed of 50 miles per hour. In the absence of evidence on reaction time, the court takes judicial notice that three-quarters of a second is required. Edwards v. Dixon, Mo.App., 298 S.W.2d 466. Using this as a measure of time for

the appellant's reaction we find that traveling at a speed of approximately 75 feet per second, he would have covered a distance of 56 feet before reacting, and this would have left less than three-quarters of a second for the respondent's reaction to the warning. The evidence was not therefore sufficient to support the charge of failure to warn.

The instruction, however, is in the conjunctive. It required a finding that the appellant failed "* * * to give a warning of the approach of his autmobile and failed to swerve his automobile to the right * * *". It has long been held that where the grounds of negligence are stated conjunctively and any one of such grounds is sufficient to authorize the verdict, the instruction is not to be held prejudicially erroneous because some other grounds stated lacked supporting evidence to warrant their inclusion. Beahan v. St. Louis Public Service Co., 361 Mo. 807, 237 S.W.2d 105, and cases therein cited; Belisle v. Wilson, Mo.Sup., 313 S.W.2d 11. The appellant concedes this to be the law, but contends that the present instruction should be considered in the light of the ruling in Belisle v. Wilson, 313 S.W.2d 11, loc. cit. 16, which quoted with approval from Beahan v. St. Louis Public Service Co., supra, as follows:

> "The fact alone that there is a conjunctive submission is not a 'cure-all' which necessarily and automatically makes harmless an erroneous portion of an instruction. On the contrary each instruction must be examined to determine whether, after the application of the 'rule of conjunctive submission,' a given instruction is, despite conjunctive submission, prejudicially erroneous."

It appears on the facts before us, however, that since there was ample evidence in the case that a swerve to the right alone would have avoided the collision, there is no reason to hold that the instruction was prejudicially erroneous be-cause it also included the failure to sound a warning.

The other assignments raised are disposed of by what we have heretofore said, and the judgment is accordingly affirmed.

ANDERSON and RUDDY, JJ., concur.